J-A07006-18

2018 PA Super 110

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LISA GAY ROBERTSON | : | |
| | : | |
| Appellant | : | No. 1493 MDA 2017 |

Appeal from the Order Entered August 31, 2017
In the Court of Common Pleas of Berks County
Criminal Division at No(s): CP-06-CR-0005091-2016

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LISA GAY ROBERTSON | : | No. 1494 MDA 2017 |

Appeal from the Order Entered August 31, 2017
In the Court of Common Pleas of Berks County
Criminal Division at No(s): CP-06-CR-0005092-2016

BEFORE: PANELLA, J., OLSON, J., and STEVENS*, P.J.E.

OPINION BY OLSON, J.: **FILED MAY 03, 2018**

The Commonwealth of Pennsylvania appeals from the August 31, 2017 orders granting Lisa Gay Robertson's ("Appellee's") motions to suppress blood alcohol concentration ("BAC") blood test results obtained during the course of two driving under the influence ("DUI") investigations. The trial court found Appellee's consent to the blood draws was involuntary because of the warnings contained on Form DL-26B that were read to her by the police

_____

* Former Justice specially assigned to the Superior Court.

officers both times that she was asked to consent to a blood test. These cases require us to consider the DL-26B form adopted by the Pennsylvania Department of Transportation ("PennDOT") after the Supreme Court of the United States' decision in **Birchfield v. North Dakota**, 136 S.Ct. 2160 (2016).[1]  We join the Commonwealth Court and hold that PennDOT permissibly revised the original DL-26 form to comply with **Birchfield**.  In light of this conclusion, and after considering the totality of the circumstances surrounding Appellee's consents to the blood tests, we conclude that Appellee's consent was voluntary in both cases.  Accordingly, we reverse the trial court's suppression orders and remand for further proceedings consistent with this opinion.

The factual background of these two cases is as follows.  On September 29, 2016, police responded to a motel parking lot for a report of an impaired driver.  When they arrived, Appellee was unable to complete field sobriety

---

[1] Beginning on February 1, 2004, section 1547(b)(2)(ii) of the Motor Vehicle Code required a police officer to warn an individual arrested for suspected DUI that the individual's refusal to submit to a blood test would subject that individual to enhanced criminal penalties.  75 Pa.C.S.A. § 1547(b)(2)(ii) (West 2016). "Officers followed that requirement by reading from [PennDOT's] Form DL-26, a portion of which tracked that statutory language." **Garlick v. Commonwealth, Dep't of Transp., Bureau of Driver Licensing**, 176 A.3d 1030, 1032 (Pa. Cmwlth. 2018) (*en banc*).  On June 23, 2016, the United States Supreme Court issued the **Birchfield** decision.  One week later, PennDOT, at the request of the Pennsylvania District Attorneys Association and a number of county district attorneys, amended Form DL-26 to remove any reference to enhanced criminal penalties for the refusal to submit to a blood test.  The new form is known as Form DL-26B. **Id.**

tests. Police arrested her for suspicion of DUI. Appellee was transported to the hospital where a police officer read her the DL-26B form. That form notified Appellee that she could face civil penalties for failing to consent to a blood draw. The form did not inform Appellee that she would be subjected to enhanced criminal penalties if she refused a blood test.[2] Appellee consented to the blood draw, which showed she had a BAC of .386.

_____

[2] Specifically, the DL-26B form that was read to and signed by Appellee provided in relevant part as follows:

> It is my duty as a police officer to inform you of the following:
>
> 1. You are under arrest for driving under the influence of alcohol or a controlled substance in violation of Section 3802 of the Vehicle Code.
>
> 2. I am requesting that you submit to a chemical test of blood.
>
> 3. If you refuse to submit to the blood test, your operating privileges will be suspended for at least 12 months. If you previously refused a chemical test or were previously convicted of driving under the influence, you will be suspended for up to 18 months.
>
> 4. You have no right to speak to an attorney or anyone else before deciding whether to submit to testing. If you request to speak with an attorney or anyone else after being provided these warnings or you remain silent when asked to submit to a blood test, you will have refused the test.

N.T., 8/15/17, Commonwealth's Exhibit 1 (case number CP-06-CR-0005091-2016).

J-A07006-18

On October 26, 2016, Appellee was involved in an automobile accident in a motel parking lot. When police arrived, Appellee was sitting on the ground and was unable to stand. Police arrested her for suspicion of DUI. Appellee was transported to the hospital where a police officer read her the DL-26B form. That form notified Appellee that she could face civil penalties for failing to consent to a blood draw. The form did not inform Appellee that she would be subjected to enhanced criminal penalties if she refused a blood test.[3] Appellee consented to the blood draw, which showed she had a BAC of .411.

The procedural history of these cases is as follows. On November 30, 2016, the Commonwealth charged Appellee via two criminal informations with two counts of DUI – general impairment[4] and two counts of DUI - highest rate.[5] On May 12, 2017, Appellee moved in both cases to suppress the blood draw evidence. Thereafter, the trial court held a suppression hearing. On August 31, 2017, the trial court issued findings of fact and conclusions of law and granted Appellee's suppression motions. The Commonwealth filed these

---

[3] The form read to and signed by Appellee at the time of the October 2016 arrest was identical to the form that she signed following her arrest on September 29, 2016. N.T., 8/5/17, Commonwealth's Exhibit 1 (case number CP-06-CR-0005092-2016).

[4] 75 Pa.C.S.A. § 3802(a)(1).

[5] 75 Pa.C.S.A. § 3802(c).

- 4 -

interlocutory appeals as of right.[6]  *See* Pa.R.A.P. 311(d) ("In a criminal case, under the circumstances provided by law, the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution.").

The Commonwealth presents two issues for our review:

1. Did the trial court err in suppressing evidence pursuant to *Birchfield* . . . where the DL-26B form was modified to remove the objectionable language regarding the enhanced penalties for a blood testing refusal, rendering the consent to the blood draw[s] voluntary?

2. Did the trial court err in suppressing evidence pursuant to *Birchfield* . . . where the totality of the circumstances indicates that the consent to the blood draw[s] was voluntary?

Commonwealth's Brief at 4.

Both of the Commonwealth's issues challenge the trial court's suppression orders.  We review a trial court's order suppressing evidence for an abuse of discretion and our scope of review consists of "only the evidence from the defendant's witnesses along with the Commonwealth's evidence that remains uncontroverted."  *Commonwealth v. Maguire*, 175 A.3d 288, 291 (Pa. Super. 2017) (citations omitted).

---

[6] The Commonwealth and trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

Preliminarily, we review the legal and administrative developments regarding Pennsylvania's DUI laws over the past two years. In **Birchfield**, the Supreme Court of the United States held that criminal penalties imposed on individuals who refuse to submit to a warrantless blood test violate the Fourth Amendment (as incorporated into the Fourteenth Amendment). **Birchfield**, 136 S.Ct. at 2185–2186. Within one week of that decision, PennDOT revised the DL-26 form to remove the warnings mandated by 75 Pa.C.S.A. § 3804 that theretofore informed individuals suspected of DUI that they would face enhanced criminal penalties if they refused to submit to a blood test. It was this revised form, known as Form DL-26B (which did not include warnings regarding enhanced criminal penalties), that the police officers read to Appellee.

Despite the creation of the DL-26B form in the wake of **Birchfield**, numerous cases pending before trial and appellate courts involved defendants who were given the warnings contained in the original DL-26 form that erroneously informed them that they would face enhanced criminal penalties if they refused to submit to a blood test. This Court ultimately held that the Form DL-26 warnings read to defendants prior to PennDOT's revision were partially inaccurate. **Commonwealth v. Evans**, 153 A.3d 323, 331 (Pa. Super. 2016) ("Since **Birchfield** held that a state may not 'impose criminal penalties on the refusal to submit to [a warrantless blood] test,' the police officer's advisory to [a]ppellant [that refusal to submit to the test could subject

appellant to more severe penalties set forth in 75 Pa.C.S.A. § 3804(c)] was partially inaccurate."). Thus, when evaluating whether a defendant's consent to a blood draw was voluntary or involuntary, trial courts are required to consider whether the defendant was given inaccurate information regarding the criminal consequences of refusing to submit to a blood test. *Id.*, *citing* **Birchfield**, 136 S.Ct. at 2186. This Court subsequently held that imposing enhanced criminal penalties for failure to consent to a blood draw constituted an illegal sentence because of **Birchfield**. **Commonwealth v. Giron**, 155 A.3d 635, 639 (Pa. Super. 2017).

On July 20, 2017, Governor Thomas W. Wolf signed into law Act 30 of 2017 which amended 75 Pa.C.S.A. § 3804 to comport with **Birchfield**. Specifically, Act 30 provides for enhanced criminal penalties for individuals who refuse to submit to blood tests only when police have obtained a search warrant for the suspect's blood. **See** 75 Pa.C.S.A. § 3804(c). Hence, from July 20, 2017 onwards the DL-26B form conforms to statutory law. For approximately the previous 13 months, including at the times of Appellee's arrests, the DL-26B form warnings were consistent with the law as interpreted by the Supreme Court of the United States and this Court, but inconsistent with the (unconstitutional) provisions of Title 75.

With this background in mind, we turn to the Commonwealth's first issue. The trial court found that PennDOT lacked the authority to amend the DL-26 form prior to Act 30's passage. Specifically, the trial court found that

PennDOT's amendment of the DL-26 form to conform to **Birchfield** violated the warnings provision contained in the Motor Vehicle Code at the time. Specifically, that provision provided that "[i]t shall be the duty of the police officer to inform the person [suspected of DUI] that . . . if the person refuses to submit to chemical testing, upon conviction or plea for violating section 3802(a)(1)[7], the person will be subject to the penalties provided in section 3804(c) (relating to penalties)." 75 Pa.C.S.A. § 1547(b)(2)(ii) (West 2016).

We find persuasive a recent *en banc* decision by the Commonwealth Court. As in the case at bar, a driver (referred to as "Licensee") argued that PennDOT lacked the statutory authority to amend the DL-26 form prior to the enactment of Act 30. The Commonwealth Court rejected that argument and explained that:

> It is true, as Licensee argues, that the language contained in Section 1547(b)(2)(ii) was mandatory at the time Trooper requested that Licensee submit to a blood test. However, while Section 1547(b)(2)(ii) then commanded that a warning about enhanced criminal penalties be given, the purpose behind that provision is to make a licensee aware of the consequences of a

---

[7] Section 3802(a)(1) of Title 75 provides:

**(a)   General impairment.—**

   (1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(a)(1).

- 8 -

refusal to take the test so that he [or she] can make a knowing and conscious choice.

Following ***Birchfield***, and as the Superior Court concluded thereafter, a licensee cannot be criminally punished for refusing a police officer's request to test his blood pursuant to the Implied Consent Law. Although, at the time Trooper requested that Licensee submit to a blood test, Section 1547(b)(2)(ii) still required a warning that a licensee would be subject to enhanced criminal penalties under Section 3804(c) for refusing a test of his blood, Licensee could not, as a matter of constitutional law, be subject to such penalties. Stated simply, enhanced criminal penalties were not a consequence of Licensee's refusing the requested blood test. Licensee's argument is, in effect, that because the General Assembly did not immediately amend Section 1547(b)(2)(ii), [Penn]DOT and the police had to continue to apply Section 1547(b)(2)(ii). However, the effect of ***Birchfield*** and the Superior Court cases that followed was to render the criminal penalties warned of in Section 1547(b)(2)(ii) as applied to blood testing unenforceable and to effectively sever that section from the rest of the [Motor] Vehicle Code. ***See*** 1 Pa. C.S.[A.] § 1925.

***Garlick*** 176 A.3d at 1036 (cleaned up). ***Garlick*** is only persuasive authority. ***See Estate of Paterno v. Nat'l Collegiate Athletic Ass'n***, 168 A.3d 187, 201 (Pa. Super. 2017). Nonetheless, we fully agree with our sister court's well-reasoned analysis and adopt it as our own. Hence, we hold that PennDOT had the authority to amend the DL-26 form prior to the enactment of Act 30.

Next, the trial court found that, notwithstanding the amended DL-26B form, courts in Pennsylvania generally presume that defendants are aware of the law. ***See*** Findings of Fact and Conclusions of Law, 8/31/17, at 8, *citing* ***In re Kearney***, 7 A.2d 159, 161 (Pa. Super. 1939); ***see also*** 18 Pa.C.S.A. § 304 cmt. (citations omitted) ("Generally speaking, ignorance or mistake of law is no defense."); ***Commonwealth v. Cline***, 177 A.3d 922, 926 (Pa.

Super. 2017) (citation omitted). The trial court reasoned that, even though Appellee was read the DL-26B form which deleted any reference to criminal penalties for the failure to submit to a blood test, Appellee was presumed to be aware of the (unconstitutional) Motor Vehicle Code provision that, until July 20, 2017, mandated enhanced criminal penalties for those convicted of DUI who refused a blood test. Apparently, however, the trial court did not deem it necessary to presume that Appellee knew about the United States Supreme Court's decision in *Birchfield* and its impact on the statutory warnings that are read to individuals who are asked to consent to a blood test.

We are unaware of any Pennsylvania cases addressing whether the presumption that a defendant knows the law extends to case law as well as statutory law. We find instructive, however, this Court's decision in *Commonwealth v. Baldwin*, 789 A.2d 728 (Pa. Super. 2001). In *Baldwin*, the petitioner filed his Post-Conviction Relief Act petition more than 60 days after a new rule of constitutional law was announced. As such, he failed to plead and prove the applicability of the new constitutional rule exception to the PCRA's one-year time bar. *See* 42 Pa.C.S.A. § 9545(b)(2) (requiring that an untimely PCRA petition that relies on a new rule of constitutional law be filed within 60 days of the case making that rule retroactive). This Court held that the petitioner's ignorance of the case law did not excuse his failure to file his petition within 60 days of the decision he relied on. *Baldwin*, 789 A.2d at 731.

Implicit within this holding is that individuals are not only presumed to know statutory law but also developments in case law. This is consistent with decisions from other jurisdictions. *See Plaza v. Hudson*, 2008 WL 5273899, *6 (N.D. Ohio Dec. 17, 2008) (citations omitted) (petitioners have constructive knowledge of the law "through published case law and the statutory provisions").

This presumption is also consistent with the common law heritage of this Commonwealth. Unlike Louisiana, which has a civil law tradition, "Pennsylvania has a common law tradition." *In re Roca*, 173 A.3d 1176, 1191 (Pa. 2017) (cleaned up). Hence, a substantial component of Pennsylvania law is not contained within Purdon's Statutes or the Pennsylvania Consolidated Statutes. Instead, it is contained within the pages of the Pennsylvania Reporter, the Atlantic Reporter, and/or prior volumes of court decisions. It would be incongruous to presume that individuals are aware of changes in the statutory laws published in the Pamphlet Laws but are not presumed to be aware of changes in the case law published in the United States Reports or Pennsylvania Reporter.

Furthermore, the word "law" is generally regarded as including court decisions. The relevant definition of "law" in Black's Law Dictionary is, "The aggregate of legislation, **judicial precedents**, and accepted legal principles; the body of authoritative grounds of judicial and administrative action; esp[ecially], the body of rules, standards, and principles that the courts of a

particular jurisdiction apply in deciding controversies brought before them[.]" *Black's Law Dictionary*, 1015 (10th ed. 2014) (emphasis added). Hence, "law" is not only "legislation" but also "judicial precedents." **Birchfield** was a judicial precedent which was the law of this Commonwealth at the time of Appellee's arrest. **Cf.** U.S. Const. art. VI, cl. 2 (the Constitution is the supreme law of our nation). Accordingly, the presumption that an individual is aware of the law includes not just statutory compilations but also judicial decisions. Thus, the trial court erred in finding that Appellee was presumed to believe she was subject to enhanced criminal penalties because of the unconstitutional provision of the Motor Vehicle Code.

We also reject the trial court's contention that the police had an affirmative duty to inform Appellee that she had a right to refuse a blood test without risking enhanced criminal penalties. In **Commonwealth v. Smith**, 77 A.3d 562 (Pa. 2013), our Supreme Court considered whether police officers were required to inform drivers that a positive chemical test result could be used against them during criminal proceedings. Our Supreme Court held that no affirmative duty existed. **Id.** at 571. Our Supreme Court explained that "the investigating character and fluid nature of searches and seizures render rules that require detailed warnings by law enforcement simply unfeasible." **Id.** The same reasoning applies in this case. It would be unfeasible to require police to inform individuals of current legal developments prior to conducting a search or seizure. Accordingly, police did not have an affirmative duty to

inform Appellee that she could refuse a blood test without risking harsher criminal penalties. ***See also Commonwealth v. Smith***, 177 A.3d 915, 921-922 (Pa. Super. 2017) (***Birchfield*** is inapplicable since appellant was read the revised DL-26B form and, therefore, never advised that she would be subject to enhanced criminal penalties if she refused to submit to a blood test.).

Having determined that PennDOT had the authority to amend the DL-26 form prior to Act 30's enactment, and that Appellee does not reap the benefit of the presumption of knowing only statutory law, we turn to the specific facts of these cases. Under ***Evans***, a trial court must consider the totality of the circumstances when determining if a defendant's consent to a blood draw was voluntary. ***Evans***, 153 A.3d at 328 (citation omitted). As our Supreme Court explained:

> While there is no hard and fast list of factors evincing voluntariness, some considerations include: 1) the defendant's custodial status; 2) the use of duress or coercive tactics by law enforcement personnel; 3) the defendant's knowledge of his right to refuse to consent; 4) the defendant's education and intelligence; 5) the defendant's belief that no incriminating evidence will be found; and 6) the extent and level of the defendant's cooperation with the law enforcement personnel.

***Commonwealth v. Gillespie***, 821 A.2d 1221, 1225 (Pa. 2003) (Eakin, J., opinion announcing the judgment of the court) (cleaned up), *citing* ***Commonwealth v. Cleckley***, 738 A.2d 427, 433 n.7 (Pa. 1999).

In both of these cases, Appellee was in custody. Thus, the first factor weighed against a finding of voluntariness. Police did not use coercive tactics

nor was Appellee under duress.[8]  Thus, the second factor weighed in favor of finding voluntariness.  Appellee was properly advised of her right to refuse a blood draw.  Hence, the third factor weighed in favor of a finding of voluntariness.  The fourth and fifth factors were neutral because no evidence was presented regarding Appellee's education and intelligence or whether Appellee was aware that incriminating evidence would be found in her blood.  Finally, Appellee fully cooperated with police.  Accordingly, the last factor weighed in favor of voluntariness.  In sum, the only factor that weighed against a finding of voluntariness was that Appellee was in custody.  No reasonable fact-finder could weigh these factors and determine that Appellee's consent was involuntary.  As such, we decline to remand this matter for further fact-finding and instead reverse the trial court's suppression orders and remand for further proceedings consistent with this opinion.

In sum, PennDOT had the authority to amend the DL-26 form prior to the enactment of Act 30.  Moreover, the DL-26B form read to Appellee complied with the dictates of the High Court set forth in **Birchfield**, and the police officers had no affirmative duty to tell Appellee that she would **not** be subjected to enhanced criminal penalties if she refused the blood tests.  With respect to the specific facts of these cases, we conclude that Appellee's

---

[8] Appellee's arguments at the suppression hearing regarding coercive tactics and duress were merely recitations of facts indicating that Appellee was under arrest.

- 14 -

consent to the blood draws was voluntary. Accordingly, we reverse the trial court's suppression orders and remand for further proceedings consistent with this opinion.

Orders reversed. Cases remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/3/2018