J-S42035-18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JUSTIN DANIEL KUZMA, | : | |
| | : | |
| Appellant | : | No. 39 MDA 2018 |

Appeal from the Judgment of Sentence December 19, 2017
in the Court of Common Pleas of Cumberland County
Criminal Division at No(s): CP-21-CR-0003819-2016

BEFORE:    BOWES, MCLAUGHLIN, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:    **FILED SEPTEMBER 05, 2018**

Justin Daniel Kuzma (Appellant) appeals from the December 1, 2017 judgment of sentence of 30 days to six months of incarceration following his nonjury convictions for, *inter alia*, a second offense of driving under the influence (DUI) – high rate of alcohol.  Specifically, Appellant challenges the denial of his pre-trial suppression motion, which alleged that the warrantless blood draw was obtained in violation of ***Birchfield v. North Dakota***, ___ U.S. ___, 136 S.Ct. 2160 (2016).  Upon review, we affirm.

On September 27, 2016, Trooper Ryan Ivancik conducted a traffic stop in Carlisle, Cumberland County, for a turn signal violation. When Trooper Ivancik approached Appellant in his vehicle, he immediately detected the odor of an alcoholic beverage from the interior of the vehicle.

---

*Retired Senior Judge assigned to the Superior Court.

Trooper Ivancik requested that [Appellant] provide him with his license and vehicle documentation, which [Appellant] struggled to do. While conversing with [Appellant], Trooper Ivancik noticed that [Appellant] had slurred speech, and glassy, bloodshot eyes. [Appellant] told the trooper that he had left the Gingerbread Man, where he had consumed two beers. After having him perform standard field sobriety tests and take a preliminary breath test, Trooper Ivancik arrested [Appellant] and transported him to Carlisle Regional Medical Center.

Upon arrival at the Carlisle Regional Medical Center, Trooper Ivancik read the "new" DL-26 [(DL-26B)] form to [Appellant]; this new form omits any language regarding increased criminal penalties for the refusal to provide a blood sample. [Appellant] signed the form and provided a sample of his blood, with a result of .132.

Trial Court Opinion, 9/5/2017, at 1-2 (unnecessary capitalization removed).

Prior to trial, Appellant filed a motion to suppress, claiming that his consent to the blood draw was not voluntary because, notwithstanding **Birchfield**, enhanced criminal penalties still existed at 75 Pa.C.S. § 3804(c), and Trooper Ivancik violated the mandates of 75 Pa.C.S. § 1547(b)(2)(ii)[1] by failing to warn Appellant of subsection 3804(c)'s enhanced criminal penalties. Omnibus Pre-Trial Motion, 5/16/2017, at ¶¶ 13-17. A hearing was held where the aforementioned facts were developed. The trial court denied the motion, finding that the revised DL-26B form complied with the

---

[1] At the time of the traffic stop, this subsection provided that "[i]t shall be the duty of the police officer to inform the person that… if the person refuses to submit to chemical testing… the person will be subject to the penalties provided in [sub]section 3804(c)[.]" 75 Pa.C.S. § 1547(b)(2)(ii) (effective May 25, 2016 to July 19, 2017).

- 2 -

mandates of *Birchfield*, subsection 1547(b)(2) was not implicated, and Appellant's consent was voluntary.  Trial Court Opinion, 9/5/2017, at 4-5.

Thereafter, Appellant was convicted following a nonjury trial and sentenced as indicated above.  Appellant timely filed a notice of appeal.[2] Appellant presents two issues for this Court's consideration: (1) whether the trial court erred in denying Appellant's motion to suppress in violation of *Birchfield* and 75 Pa.C.S. § 1547(b)(2); and (2) whether the trial court erred in denying Appellant's motion to suppress because his consent was not voluntary.  Appellant's Brief at 6.

We consider Appellant's claims mindful of the following.

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.  Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole.  Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where ... the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts.  Thus, the conclusions of law of the court[] below are subject to our plenary review.

---

[2] Appellant complied with Pa.R.A.P. 1925(b).  The trial court complied with Pa.R.A.P. 1925(a) by filing an order directing this Court to its September 5, 2017 opinion and order denying Appellant's motion to suppress.

*Commonwealth v. Perel*, 107 A.3d 185, 188 (Pa. Super. 2014) (quoting *Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010)).

Appellant first claims that the trial court erred in denying his motion to suppress because even though *Birchfield* determined that consent could not be based on the fear of enhanced criminal penalties for refusing to submit to a warrantless blood draw, 75 Pa.C.S. § 3804(c) still contained such a provision at the time of Appellant's arrest. Therefore, Appellant argues that Trooper Ivancik was required to notify Appellant of these enhanced criminal penalties pursuant to 75 Pa.C.S. § 1547(b)(2), and his failure to do so subjected Appellant to an illegal search. Appellant's Brief at 17.

Appellant's argument is based on a flawed understanding of Pennsylvania's DUI jurisprudence, and so we begin with an overview of *Birchfield*, its effect on our DUI laws, and forms DL-26 and DL-26B as they relate to the facts of Appellant's arrest.

> In *Birchfield*, the Supreme Court of the United States held that criminal penalties imposed on individuals who refuse to submit to a warrantless blood test violate the Fourth Amendment (as incorporated into the Fourteenth Amendment). Within one week of that decision, PennDOT revised the DL–26 form to remove the warnings mandated by 75 Pa.C.S.[] § 3804 that theretofore informed individuals suspected of DUI that they would face enhanced criminal penalties if they refused to submit to a blood test [in order to comply with *Birchfield*]. It was this revised form, known as Form DL–26B (which did not include warnings regarding enhanced criminal penalties), that the [trooper] read to Appell[ant].

\*\*\*

- 4 -

This Court subsequently held that imposing enhanced criminal penalties for failure to consent to a blood draw constituted an illegal sentence because of *Birchfield*. [*See*] *Commonwealth v. Giron*, 155 A.3d 635, 639 (Pa. Super. 2017).

On July 20, 2017, Governor Thomas W. Wolf signed into law Act 30 of 2017 which amended 75 Pa.C.S.[] § 3804 to comport with *Birchfield*. Specifically, Act 30 provides for enhanced criminal penalties for individuals who refuse to submit to blood tests only when police have obtained a search warrant for the suspect's blood. *See* 75 Pa.C.S.[] § 3804(c). Hence, from July 20, 2017 onwards the DL–26B form conforms to [the revised] statutory law. For approximately the previous 13 months, including at the time[] of Appell[ant's] arrest[], the DL–26B form warnings were consistent with the law as interpreted by the Supreme Court of the United States and this Court, but inconsistent with the (unconstitutional) provisions of Title 75.

*Commonwealth v. Robertson*, 186 A.3d 440, 444-45 (Pa. Super. 2018)

(some citations omitted).

Appellant contends that this inconsistency between the DL-26B form and the provisions of our DUI statute that were rendered unconstitutional by *Birchfield*, but not statutorily amended until Act 30, required suppression of his blood draw. Specifically, Appellant posits that

[i]n its denial of the suppression motion, the suppression court stated that the DL-26[B] form "eliminated all mention of increased criminal penalties as a result of a refusal" and that the form is "in compliance with the mandates of *Birchfield*, as it eliminated any mention of increased criminal penalties." [Trial Court Opinion, 9/5/2017,] at 4. This is exactly the issue. The DL-26B form eliminated the language required under the law by [subsection] 1547(b)(2) of the Motor Vehicle Code.

Appellant's Brief at 17. In other words, Appellant argues that because Trooper Ivancik did not warn Appellant that he would be subjected to

subsection 3804(c)'s enhanced criminal penalties, which were rendered unconstitutional by *Birchfield*, the blood draw violated *Birchfield*. We find this argument unsound.

We recently rejected Appellant's flawed argument and held that PennDOT had the authority to amend the DL-26 form to comport with *Birchfield* prior to the enactment of Act 30. *Robertson*, 186 A.3d at 446. In doing so, we adopted the following well-reasoned analysis of the Commonwealth Court.

> It is true, as Licensee argues, that the language contained in [subs]ection 1547(b)(2)(ii) was mandatory at the time Trooper requested that Licensee submit to a blood test. However, while [subs]ection 1547(b)(2)(ii) then commanded that a warning about enhanced criminal penalties be given, the purpose behind that provision is to make a licensee aware of the consequences of a refusal to take the test so that he [or she] can make a knowing and conscious choice.
>
> Following *Birchfield*, and as the Superior Court concluded thereafter, a licensee cannot be criminally punished for refusing a police officer's request to test his blood pursuant to the Implied Consent Law. **Although, at the time Trooper requested that Licensee submit to a blood test, [subs]ection 1547(b)(2)(ii) still required a warning that a licensee would be subject to enhanced criminal penalties under [subs]ection 3804(c) for refusing a test of his blood, Licensee could not, as a matter of constitutional law, be subject to such penalties.** Stated simply, enhanced criminal penalties were not a consequence of Licensee's refusing the requested blood test. Licensee's argument is, in effect, that because the General Assembly did not immediately amend [subs]ection 1547(b)(2)(ii), [Penn]DOT and the police had to continue to apply [subs]ection 1547(b)(2)(ii). However, the effect of *Birchfield* and the Superior Court cases that followed was to render the criminal penalties warned of in [subs]ection 1547(b)(2)(ii) as applied to blood testing unenforceable and to

effectively sever that section from the rest of the [Motor] Vehicle Code. **See** 1 Pa. C.S.[] § 1925.

**Id**. at 445-46, *quoting* **Garlick v. Commonwealth, Dep't of Transp., Bureau of Driver Licensing**, 176 A.3d 1030, 1036 (Pa. Cmwlth. 2018) (*en banc*).

Moreover, "the presumption that an individual is aware of the law includes not just statutory compilations but also judicial decisions." **Robertson**, 186 A.3d at 447. Therefore, on the day that **Birchfield** became law, Appellant should have known that the enhanced penalties codified in subsection 3804(c) were without legal effect, and that the trooper was not obligated to notify Appellant of this unconstitutional subsection because it was no longer applicable. **See Commonwealth v. Johnson**, ___ A.3d ___, 2018 WL 2295895, at *3 (Pa. Super. filed May 21, 2018). Accordingly, we reject Appellant's argument, and find that Appellant's blood draw did not violate **Birchfield** or subsection 1547(b)(2), but rather complied entirely with the dictates of **Birchfield**.

Having determined that **Birchfield** does not require suppression of Appellant's blood draw, we now consider whether Appellant's consent was voluntary. In that regard, our Supreme Court has held as follows.

In determining the validity of a given consent, the Commonwealth bears the burden of establishing that a consent is the product of an essentially free and unconstrained choice—not the result of duress or coercion, express or implied, or a will overborne—under the totality of the circumstances. The standard for measuring the scope of a person's consent is based on an

objective evaluation of what a reasonable person would have understood by the exchange between the officer and the person who gave the consent. Such evaluation includes an objective examination of the maturity, sophistication and mental or emotional state of the defendant. Gauging the scope of a defendant's consent is an inherent and necessary part of the process of determining, on the totality of the circumstances presented, whether the consent is objectively valid, or instead the product of coercion, deceit, or misrepresentation.

***Commonwealth v. Evans***, 153 A.3d 323, 328 (Pa. Super. 2016), *quoting*

***Commonwealth v. Smith***, 77 A.3d 562, 573 (Pa. 2013) (internal citations, quotations, and corrections omitted).

While there is no hard and fast list of factors evincing voluntariness, some considerations include: 1) the defendant's custodial status; 2) the use of duress or coercive tactics by law enforcement personnel; 3) the defendant's knowledge of his right to refuse to consent; 4) the defendant's education and intelligence; 5) the defendant's belief that no incriminating evidence will be found; and 6) the extent and level of the defendant's cooperation with the law enforcement personnel.

***Robertson***, 186 A.3d at 447 (citations omitted).

Appellant claims that his consent was "tainted by the direction and authority" of the trooper. Appellant's Brief at 21. Specifically, he alleges that he did not have a choice whether or not to consent to the blood draw because Trooper Ivancik informed him that "[t]he next step is, I'm transporting you to the Carlisle Regional Medical Center, that's where I read you DL-26, which is designed through PennDOT, which is a consent to draw blood from you. After we do that, we go from here straight to the Cumberland County Prison…." ***Id.*** (citation to dashcam footage omitted).

The trial court addressed Appellant's argument when it denied his motion to suppress.

> [Appellant] wishes to further extend the protections of **Birchfield**, and turn our law enforcement officers into lawyers who advise defendants that their refusal to submit to a chemical test may increase their probability of success on the underlying charge. The law does not require such a step. The DL-26 form requests consent, and advises defendants of the legal civil penalty, *i.e.*, driver's license suspension, that will result from the refusal to provide that consent. No more is required.
>
> [Appellant] puts special emphasis on the fact that the trooper told him that he would be transporting him to the hospital to read him the DL-26[B], which 'is a consent to draw blood from you.' Apparently, [Appellant] believes that the fact that the trooper did not specifically say that the form was an *option* to consent renders the entire result inadmissible; however, this is inconsistent with Pennsylvania law. The reading of the DL-26[B] form ensures voluntariness of consent, by ensuring that an arrestee is informed that consent is not required. Specifically, the form, as read to [Appellant], states "I am requesting that you submit to a chemical test of [blood]. If you refuse to submit to the chemical test….." [Appellant] was clearly informed that the chemical test was a 'request,' and that he could refuse; however, [Appellant] was cooperative with giving his blood, as he was cooperative throughout his entire interaction with Trooper Ivancik. There is absolutely no evidence that his consent was not knowingly, intelligently[,] and voluntarily given.

Trial Court Opinion, 9/5/2017, at 4-5 (unnecessary capitalization omitted).

We agree with the trial court that Appellant misconstrues Trooper Ivancik's statement in an attempt to invalidate an otherwise clearly voluntary consent. Moreover, we find the totality of the circumstances reveal that Appellant's consent was objectively valid. As in **Johnson, supra**, here Trooper Ivancik "had no obligation to enlighten [Appellant] as

to the full details of federal constitutional law; [Trooper Ivancik] only needed to tell [Appellant] the current, legal consequences of refusing to consent to the blood-draw. [He] did. Thus, [Appellant's] consent was voluntary." **Id.** at *3-4 (citation omitted).

Accordingly, the trial court properly denied Appellant's motion to suppress, and we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/05/2018