J-S39040-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TEAH VIRGINIA HARTRANFT | : | |
| | : | |
| Appellant | : | No. 438 MDA 2022 |

Appeal from the Judgment of Sentence Entered January 18, 2022
In the Court of Common Pleas of Cumberland County Criminal Division at
No(s): CP-21-CR-0000452-2020

BEFORE: PANELLA, P.J., BENDER, P.J.E., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.: **FILED: APRIL 4, 2023**

Appellant Teah Virginia Hartranft appeals from the judgment of sentence imposed after she was convicted of driving under the influence (DUI) and resisting arrest. Appellant's counsel (Counsel) has filed a petition to withdraw and an ***Anders***/***Santiago***[1] brief. After review, we grant Counsel's petition to withdraw and affirm the judgment of sentence.

The trial court summarized the relevant facts and procedural history of this matter as follows:

> On November 3, 2019, at approximately 1:00 A.M., Officer Evan Shipley of the Mechanicsburg Borough Police was on patrol in the vicinity of North Walnut Street when he encountered a vehicle making a left turn without using its turn signal. Officer Shipley decided to follow that vehicle and, upon observing it make a second turn without the operator using a turn signal, he initiated

---

[1] ***Anders v. California***, 386 U.S. 738 (1967); ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009).

a traffic stop. The driver and sole occupant of the vehicle was identified at trial as Appellant.

Upon speaking with Appellant, Officer Shipley immediately noticed that her eyes were glassy and bloodshot, that she had some slurred speech and that she had difficulty correctly identifying her driver's license to produce it for him. Eventually, Officer Shipley asked Appellant to leave her vehicle, and he observed that she had an odor of alcohol on her breath, that she had difficulty standing without swaying, and was leaning against her vehicle. During this time, Officer Shipley was joined by Officer Ethan Paulus, also of the Mechanicsburg Borough Police.

Officer Shipley further noted that as the interaction continued, Appellant became louder and more excited in her conduct. Eventually, Appellant was asked to perform Standard Field Sobriety Tests (SFST), which she initially complied with, but ultimately refused to continue performing on the basis that she was disabled. Based on all of his observations of Appellant, as well as her refusal to perform SFSTs, Officer Shipley placed Appellant under arrest on suspicion of DUI, pending transport to the Cumberland County DUI booking center.

Once the decision was made to place Appellant under arrest, she ceased any cooperation with the police and escalated her agitation. Notably, Appellant began to talk over the officers in an attempt to drown them out, then went limp and had to be physically placed inside the police cruiser. During the drive to the DUI booking center, Appellant began yelling at the officers, and otherwise expressed that she was irate with them. Upon arriving at the booking center, Appellant's behavior escalated again, as she continued yelling at the officers and demanded that one of them take out his gun and shoot her. Appellant then shoved Officer Shipley and attempted to break away, leading to her being pinned against the vehicle until additional staff from the booking center came outside and helped get Appellant under control. Eventually, Appellant attempted to kick one of the booking center staff and was placed in a restraint chair for transport into the building. Appellant was ultimately processed by the DUI booking center.

The formal information against Appellant was filed on April 15, 2020, with the final pretrial conference held on August 11, 2021, and a jury trial being held on August 31, 2021. Following a one-day trial, and as discussed above, Appellant was convicted on the

charges of DUI — general impairment, and resisting arrest.[2]  . . . Prior to sentencing, on October 15, 2021, Appellant, through her previous counsel, filed a motion to continue sentencing, which was granted on October 18, 2021, with a new sentencing date set for November 30, 2021.

On November 30, 2021, Appellant presented argument regarding whether her previous, out-of-state DUI convictions should be counted for sentencing purposes, leading to this court entering an order on that date continuing sentencing until December 14, 2021. A further condition of that order was to place Appellant on a TAD (Transdermal Alcohol) bracelet, due to the court receiving information that Appellant was drinking alcohol while awaiting sentencing. On December 14, 2021, the Commonwealth requested and was granted a continuance of sentencing, as it awaited receipt of out-of-state conviction records for Appellant. Sentencing finally occurred on January 18, 2022, and resulted in Appellant receiving a sentence of incarceration of ten (10) days to twenty-four (24) months of incarceration, with one day of time credit, at the charge of DUI — general impairment,[3] followed by a sentence of eighteen (18) months of consecutive probation on the charge of resisting arrest. Additionally, immediately following Appellant's sentencing, Appellant's previous counsel orally moved to withdraw, and, with Appellant's consent, was granted leave to do so by order of court entered on that same date.

On January 28, 2022, Appellant filed a timely, self-represented post-sentence motion. By order of court filed January 31, 2022, the Commonwealth was given twenty (20) days to respond to that

---

[2] 75 Pa.C.S. § 3802(a)(1), and 18 Pa.C.S. § 5104.

[3] On the DUI charge (third offense), graded as a misdemeanor of the second-degree, the trial court sentenced Appellant to the statutory minimum term of ten days and the statutory maximum term of two years of incarceration. **See** Order, 1/18/22; **see also** 75 Pa.C.S. §§ 3803(a)(2), 3804(a)(3). The record further reflects that Appellant was ordered to undergo alcohol-related treatment. **See** Order, 1/18/22; Suspension of Operating Privilege, 1/20/22; 75 Pa.C.S. § 3804(d) (providing that when the defendant is assessed and ordered to undergo additional treatment, the trial court "shall impose a minimum sentence as provided by law and a maximum sentence equal to the statutorily available maximum").

motion and timely did so by way of written response filed on February 7, 2022.

Trial Ct. Op., 5/10/22, at 1-6 (citations omitted and formatting altered).

On February 9, 2022, the trial court entered an order denying Appellant's post-sentence motion. Order, 2/9/22. Therefore, Appellant had thirty days, or until March 11, 2022, in which to file a timely notice of appeal. **See** Pa.R.Crim.P. 720(A)(2)(a). Appellant filed her notice of appeal on March 15, 2022, making it facially untimely.

However, we note that on February 18, 2022, Appellant filed a *pro se* motion requesting the appointment of counsel. On March 2, 2022, the trial court noted that it had been unavailable to rule on Appellant's motion and appointed Counsel to represent Appellant. Order 3/2/22. The order also extended the appeal period from March 11, 2022, to March 15, 2022. **Id.** Appellant filed a counseled notice of appeal on March 15, 2022.

Generally, courts are not permitted to extend the time for filing an appeal. **See Commonwealth v. Smith**, 501 A.2d 273, 275 (Pa. Super. 1985) (that the timeliness of an appeal is jurisdictional and "[a] court may not enlarge the time for filing a notice of appeal as a matter of grace or indulgence" (citations omitted)); Pa.R.A.P. 105(b). However, the general rule does not preclude this Court granting relief in the case of fraud or breakdown in the processes of the court. **Commonwealth v. Braykovich**, 664 A.2d 133, 136 (Pa. Super. 1995); Pa.R.A.P. 105, note.

Here, we conclude that there was a breakdown in the processes of the courts. Our review of the record reveals that the docket entry for the February 9, 2022 order denying Appellant's post-sentence motion does not contain a notation regarding service of the order on Appellant. *See* Pa.R.Crim.P. 114(C)(2)(c) (providing that trial court criminal docket entries shall contain, *inter alia*, "the date of service of the order or court notice"); *see also* ***Commonwealth v. Hess***, 810 A.2d 1249, 1253 (Pa. 2002) (noting that Rule 114's language leaves no question that trial court clerk's obligations regarding docket entries are not discretionary); ***In re L.M.***, 923 A.2d 505, 509 (Pa. Super. 2007) (interpreting similar civil rule, Pa.R.Civ.P. 236, and holding that where there is no indication on trial court docket that notice has been given, appeal period has not started to run). Moreover, we note that the order denying Appellant's post-sentence motion appears to have been served on Appellant's prior counsel but not on Appellant. *See* Trial Ct. Docket Entry, 2/9/22. Because the record fails to indicate when Appellant was served with the order denying her post-sentence motion, we conclude there was a breakdown in the court's operation. ***See Braykovich***, 664 A.2d at 136 (noting that this Court may permit enlargement of the filing period in extraordinary circumstances, including situations in which there was a breakdown in court processes). For these reasons, we decline to quash the appeal.

After Appellant filed her notice of appeal, the trial court ordered Appellant to file a concise statement of errors complained of on appeal

pursuant to Pa.R.A.P. 1925(b). In lieu of Rule 1925(b) statement, Counsel filed a notice of intent to file an **Anders**/**Santiago** brief pursuant to Rule 1925(c)(4). On May 10, 2022, the trial court filed a Rule 1925(a) opinion.

Counsel's **Anders**/**Santiago** brief identifies two potential issues:

1. The evidence was insufficient to prove that Appellant was intoxicated to a degree as to be found incapable of safely driving.

2. The evidence was insufficient to prove that Appellant had resisted arrest.

**Anders**/**Santiago** Brief at 16, 25 (formatting altered).

"When faced with a purported **Anders** brief, this Court may not review the merits of any possible underlying issues without first examining counsel's request to withdraw." **Commonwealth v. Wimbush**, 951 A.2d 379, 382 (Pa. Super. 2008) (citation omitted). Counsel must comply with the technical requirements for petitioning to withdraw by (1) filing a petition for leave to withdraw stating that after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; (2) providing a copy of the brief to the appellant; and (3) advising the appellant that he has the right to retain private counsel, proceed *pro se*, or raise additional arguments that the appellant considers worthy of the court's attention. **See Commonwealth v. Goodwin**, 928 A.2d 287, 290 (Pa. Super. 2007) (*en banc*).

Additionally, counsel must file a brief that meets the requirements established by the Pennsylvania Supreme Court in **Santiago**, namely:

(1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361.

"Once counsel has satisfied the above requirements, it is then this Court's duty to conduct its own review of the trial court's proceedings and render an independent judgment as to whether the appeal is, in fact, wholly frivolous." *Goodwin*, 928 A.2d at 291 (citation omitted). This includes "an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." *Commonwealth v. Flowers*, 113 A.3d 1246, 1250 (Pa. Super. 2015) (citation and footnote omitted).

Here, Counsel has complied with the procedural requirements for seeking withdrawal by filing a petition to withdraw, sending Appellant a letter explaining her appellate rights, and supplying Appellant with a copy of the *Anders*/*Santiago* brief.[4] *See Goodwin*, 928 A.2d at 290. Moreover,

_____

[4] On January 17, 2023, this Court discovered that along with the motion to withdraw, *Anders*/*Santiago* brief, and letter to Appellant, Counsel failed to include a certificate of service or any indication that the Counsel had provided these documents to Appellant. Accordingly, this Court directed Counsel to provide Appellant with a copy of the motion to withdraw, the *Anders*/*Santiago* brief, and the letter informing Appellant of her rights, along with copies of any enclosures, and further direct Counsel to include certificates of service reflecting that Appellant was served with these documents. Order, 1/17/23. Counsel complied with this Court's order on January 23, 2023. Appellant did not file a response.

Counsel's ***Anders***/***Santiago*** brief complies with the requirements of ***Santiago***. Specifically, Counsel includes a summary of the relevant factual and procedural history, refers to portions of the record that could arguably support Appellant's claim, and sets forth the conclusion that the appeal is frivolous. ***See Santiago***, 978 A.2d at 361. Accordingly, we conclude that Counsel has satisfied the technical requirements of ***Anders*** and ***Santiago***, and we will proceed to address the issues raised in Counsel's ***Anders***/***Santiago*** brief.

As stated, in the ***Anders***/***Santiago*** brief, Counsel identifies two issues challenging the sufficiency of the evidence supporting Appellant's convictions for DUI and resisting arrest. The following principles governs our review:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proof of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all the evidence actually received must be considered. Finally, the trier of fact while passing on the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

*Commonwealth v. Bragg*, 133 A.3d 328, 330-31 (Pa. Super. 2016) (citation omitted).

The relevant DUI statute states:

**(a) General impairment.—**

(1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

75 Pa.C.S. § 3802(a)(1). "The Commonwealth must establish that the defendant (1) was operating a motor vehicle (2) after imbibing a sufficient amount of alcohol such that he was rendered incapable of safely operating the motor vehicle." *Commonwealth v. Clemens*, 242 A.3d 659, 665 (Pa. Super. 2020) (citations omitted).

To prove a person is incapable of driving safely, the Commonwealth must prove:

that alcohol has substantially impaired the normal mental and physical faculties required to operate the vehicle safely; substantial impairment means a diminution or enfeeblement in the ability to exercise judgment, to deliberate or to react prudently to changing circumstances and conditions. The meaning of substantial impairment is not limited to some extreme condition of disability. Section 3802(a)(1) . . . is a general provision and provides no specific restraint upon the Commonwealth in the manner in which it may prove that an accused operated a vehicle under the influence of alcohol to a degree which rendered him incapable of safe driving.

*Id.* (citation omitted and formatting altered).

- 9 -

Moreover, when a defendant is charged with DUI in violation of 75 Pa.C.S. § 3802, "the fact that the defendant refused to submit to chemical testing . . . may be introduced in evidence along with other testimony concerning the circumstances of the refusal. No presumptions shall arise from this evidence[,] but it may be considered along with other factors concerning the charge." 75 Pa.C.S. § 1547(e). DUI may be proven through circumstantial evidence. *Commonwealth v. Segida*, 985 A.2d 871, 880 (Pa. 2009).

Additionally, the crime of resisting arrest is defined as follows:

A person commits a misdemeanor of the second degree if, with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance.

18 Pa.C.S. § 5104. A defendant's use of passive resistance can be sufficient to establish the crime of resisting arrest. *See Commonwealth v. Thompson*, 922 A.2d 926, 928 (Pa. Super. 2007) (explaining that Section 5104 criminalizes "resistance behavior that requires substantial force to surmount" and holding that a defendant's act of interlocking her arms and legs with her husband caused the officers' attempts to place her under arrest to be "exhaust[ing]" and amounted to "substantial force" needed to overcome defendant's resistance).

Here, the interaction between Appellant and Officer Shipley began at approximately 1:00 a.m., when Officer Shipley saw Appellant make a left turn

without using her turn signal. *See* N.T., 8/31/21, at 53-54. Officer Shipley testified that in addition to failing to use her turn signal, Appellant made a wide turn nearly striking the curb. The officer followed Appellant's vehicle and conducted a traffic stop because of Appellant's failure to use her turn signal, which is a violation of the Motor Vehicle Code.[5] Once stopped, Officer Shipley approached Appellant's car and observed that Appellant's speech was slurred, and that her eyes were bloodshot and glassy. Officer Shipley also testified that Appellant was having difficulty finding her driver's license, and that he watched as Appellant flipped through her purse past her license four separate times. Officer Shipley testified that during his interaction with Appellant, he continued to notice her slurred and exaggerated speech. Officer Shipley explained that slurred exaggerated speech and the driver's inability to locate their driver's license are specific signs of intoxication for which he was trained to watch. *See id.* at 54-61.

In light of these observations, Officer Shipley asked Appellant to exit the car. At that time, Officer Ethan Paulus arrived on the scene in a separate police vehicle. Officer Shipley testified that he suspected Appellant was either having either a medical emergency or under the influence and incapable of

---

[5] Although Appellant does not challenge the legality of the motor vehicle stop, we note that the stop was legal. Officer Shipley testified that he stopped Appellant's vehicle due to Appellant's failure to use a turn signal in violation of 75 Pa.C.S. § 3334. The officer's observation of this violation provided probable cause to stop the vehicle. *See, e.g., Commonwealth v. Prizzia*, 260 A.3d 263, 267 (Pa. Super. 2021).

safe driving. As Appellant exited the vehicle, Officer Shipley noticed that Appellant smelled of alcohol, and that she was unable to stand without support. Officer Shipley further stated that Appellant started to sway as she stood, and that although Appellant began the field sobriety tests, she ultimately failed to complete them and claimed that she had a disability. Officer Shipley testified that Appellant's demeanor changed, and she became louder and more excited. *See id.* at 62-65.

Based on the totality of Appellant's actions and the officer's observations, Officer Shipley concluded that Appellant was incapable of safe driving and placed Appellant under arrest on suspicion of DUI. The officer testified that his patrol car is equipped with a camera, and the video of his interaction was played for the jury. *See id.* at 65-70.

Once Officer Shipley placed Appellant under arrest for suspicion of DUI, he placed Appellant in handcuffs, and asked her to enter the patrol car. Appellant repeatedly refused to get in the police vehicle. Appellant then talked over the officers and dropped to her knees still refusing to enter the police vehicle. Appellant refused to move and was "dead weight." *Id.* at 77. At that point, Officer Shipley and Officer Paulus picked-up Appellant and physically placed her in the patrol vehicle. *See id.* at 77-78.

Officer Shipley said it took "substantial effort" to get Appellant into the car. *Id.* at 78. Officer Shipley testified that he transported Appellant to County DUI booking center, and while Appellant was seated in the back of the patrol car, she would go from quiet to irate. When Officer Shipley and

Appellant arrived at the DUI booking center, Appellant was irate, and she told Officer Shipley to take out his gun and shoot her. Officer Shipley had to physically remove Appellant from the car. Officer Shipley then testified that Appellant pushed him away and tried to run from him. Officer Shipley had to hold Appellant up against the car, and Appellant was flailing her arms. Additional officers came to assist Officer Shipley with Appellant. All of this was captured on video and shown to the jury. Appellant continued screaming and kicking at the officers. Officer Shipley testified that Appellant's behavior was so combative that they had to place Appellant in a restraint chair. Officer Shipley said that when he attempted to read the DL-26B form[6] to Appellant, she continued to be combative and refused to sign the acknowledgement that she was read the DL-26B. Officer Shipley testified that Appellant was so combative that the officers did not give Appellant a pen or pencil because of officer safety concerns. *See id.* at 77-95.

Cumberland County Correctional Officer Jamie Starner testified that he was working DUI processing when Officer Shipley brought Appellant to the booking center. Officer Starner testified that Appellant was belligerent and screaming "kill me, kill me" when she was removed from Officer Shipley's car. *Id.* at 147. Officer Starner stated that Appellant began to kick at him, and

---

[6] DL-26B is Department of Transportation form that includes the implied consent warnings regarding chemical testing and penalties. *See* 75 Pa.C.S. § 1547(b)(2); *see also Commonwealth v. Robertson*, 186 A.3d 440, 443 n.1 (Pa. Super. 2018).

that because of her behavior, it was very difficult to restrain Appellant. Officer Starner further testified that it took more than five officers to hold Appellant in order to secure her in the restraint chair. *See id.* at 147-153.

After review, we conclude that the Commonwealth provided sufficient evidence to prove Appellant guilty of DUI and resisting arrest. *See Bragg*, 133 A.3d at 330-31. At trial, the jury heard testimony from the arresting officer, Shipley, and one of the correctional officers, Starner, who assisted in securing Appellant. The Commonwealth also presented video evidence which depicted Appellant's driving, her arrest, and her actions both inside the police car and at the DUI booking center. As noted, at 1:00 a.m., Officer Shipley observed Appellant nearly strike a curb while making a turn in her vehicle, and the officer further observed that Appellant failed to use her turn signal when making this turn. When the officer stopped Appellant's vehicle and asked her to exit the car, there were further indications of intoxication to a degree that rendered Appellant unable to drive safely including slurred speech, inability to stand without assistance, bloodshot eyes, difficulty locating her driver's license, and Appellant smelled of alcohol. *See Clemens*, 242 A.3d at 666 (discussing indicia of intoxication that rendered an individual incapable of safe driving). Further, Appellant became combative with the officers and refused chemical testing. *See* 75 Pa.C.S. § 1547(e). On this record, viewed in the light most favorable to the Commonwealth, the evidence was sufficient for the jury to find Appellant guilty of DUI under 75 Pa.C.S. § 3802(a)(1). *See Segida*, 985 A.2d at 880 (holding that circumstantial evidence was

sufficient to establish beyond a reasonable doubt that the defendant was guilty of DUI); *see also Clemens*, 242 A.3d at 665.

Moreover, Appellant's combative behavior, which included her passive resistance of acting like dead weight along with her active resistance of flailing her arms and kicking which caused more than five officers to use substantial force to control Appellant to place her in a restraint chair, was sufficient to prove the elements of resisting arrest. **See** 18 Pa.C.S. § 5104; *see also Thompson*, 922 A.2d at 928 (holding that a defendant's use of passive resistance can be sufficient to establish the crime of resisting arrest).

For these reasons, we agree that Counsel's assessment that the sufficiency claims presented in the *Anders*/*Santiago* brief are frivolous. Further, our independent review of the record does not reveal any additional, non-frivolous issues. **See Goodwin**, 928 A.2d at 291; *Flowers*, 113 A.3d at 1250. For these reasons, we grant Counsel's petition to withdraw and affirm the judgment of sentence.

Judgment of sentence affirmed. Counsel's petition to withdraw granted.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/4/2023

- 15 -