J-S83019-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RICKY LEE ANDERSON | : | |
| | : | |
| Appellant | : | No. 649 WDA 2018 |

Appeal from the Judgment of Sentence April 5, 2018
In the Court of Common Pleas of McKean County Criminal Division at
No(s): CP-42-CR-0000293-2017

BEFORE: PANELLA, J., SHOGAN, J., and MUSMANNO, J.

MEMORANDUM BY SHOGAN, J.:                    FILED MARCH 11, 2019

Ricky Lee Anderson ("Appellant") appeals from the judgment of sentence entered following a nonjury trial on multiple vehicular charges. Appellant challenges the denial of his motion to suppress blood-test results. We affirm.

This case arises from a traffic stop conducted by Pennsylvania State Trooper Brandon W. Anderson on April 15, 2017. Sitting as the finder of fact, the trial court:

> found the testimony of Trooper Brandon Anderson credible. He was running radar traffic enforcement when [Appellant] passed by traveling 56 mph in a 40 mph zone. He then conducted a traffic stop. Supp. Tr.[1] Page 5. When he spoke to [Appellant,] [Trooper Anderson] noticed that [Appellant] had bloodshot, glassy eyes and constricted pupils. [Appellant] also had an active warrant for his arrest. Supp. Tr. Page 6. Trooper Anderson afforded [Appellant]

_____

[1] N.T. Suppression, 10/3/17.

"the opportunity for a blood draw;" and "[Appellant] consented to the blood draw." Supp. Tr. Pages 8 and 40–42. Trooper Anderson did not advise [Appellant] that he faced enhanced penalties if he refused the test. Supp. Tr. Page 8. He simply asked [Appellant] if he would submit to a blood draw and [Appellant] indicated "yes." Supp. Tr. Page 9. [Appellant] was "cooperative." Supp. Tr. Page 13.

Corporal Theodore Race also responded to the scene of the stop to assist Trooper Anderson. The court found his testimony credible. He testified that [Appellant] failed field sobriety tests and he "noticed track marks on [Appellant's] arms;" and, "they were pretty fresh to me." Supp. Tr. Pages 19, 20. [Corporal Race] asked [Appellant] to consent to a blood draw and [Appellant] answered "yes." Supp. Tr. Page 20. [Corporal Race] did not advise [Appellant] that he faced any enhanced penalties if he refused the test/blood draw. Supp. Tr. Pages 22–23. "I asked him to go to the Bradford Hospital; and I told him we were going to go there and asked him to consent to a chemical test of his blood. The entire time that [Appellant] was with me, he was cooperative; and I didn't have any issue with him as far as he didn't say that he didn't want to take a test or anything like that; and I didn't have any indicators that he was going to decline anything; and I didn't offer any — any idea of there was going to be some kind of penalty or anything like that." Supp. Tr. Page 24.

[Appellant] also testified. He did not "recall" the troopers asking him to consent to a draw/test. Supp. Tr. Page 29. The court found that [Appellant] may not recall being asked to consent but it nonetheless occurred. Supp. Tr. Pages 40–41. The court found incredible [Appellant's] testimony that he was "ordered around" and told "to go have a seat in some chair in a closet (at the hospital)[.]" Supp. Tr. Pages 29–30.

Trial Court Opinion, 9/6/18, at unnumbered 1–2 (emphasis in original).

Appellant's blood-test results were positive for amphetamine and methamphetamine. N.T. Nonjury Trial, 3/13/18, at 7. Consequently, Appellant was charged with driving under the influence of alcohol or controlled substances (general impairment), driving under the influence of alcohol or

controlled substances (high rate of alcohol), driving while operating privilege suspended or revoked, exceeding maximum speed limit by 16 MPH, careless driving, and safety restraints.[2]  The trial court denied Appellant's pretrial motion to suppress the blood-test results on October 3, 2017.  Following a nonjury trial on March 13, 2018, the trial court found Appellant guilty of all charges, except the offense of careless driving; it sentenced Appellant on April 5, 2018, to incarceration for a period of one to five years.

This appeal followed, in which Appellant's sole challenge is to the denial of his motion to suppress test results based on the warrantless seizure of his blood.  Appellant's Brief at 15.  With respect to an appeal from the denial of a motion to suppress, our Supreme Court has stated the following:

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing the ruling of a suppression court, we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted…. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

Commonwealth v. Eichinger, 915 A.2d 1122, 1134 (Pa. 2007) (citations omitted).  "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their

---

[2]  75 Pa.C.S. §§ 3802(d)(1)(ii), 3802(d)(2), 1543(a), 3362(a)(3), 3714(a), and 4581(a)(1.1), respectively.

testimony." Commonwealth v. Gallagher, 896 A.2d 583, 585 (Pa. Super. 2006). Moreover, we note that our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing. In re L.J., 79 A.3d 1073, 1087 (Pa. 2013). Further, Pa.R.Crim.P. 581, which addresses the suppression of evidence, provides in relevant part as follows: "The Commonwealth shall have the burden … of establishing that the challenged evidence was not obtained in violation of the defendant's rights." Pa.R.Crim.P. 581(H).

The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution prohibit unreasonable searches and seizures. "The administration of a blood test, performed by an agent of, or at the direction of the government, constitutes a search under both the United States and Pennsylvania Constitutions." Commonwealth v. Evans, 153 A.3d 323, 327–328 (Pa. 2016) (quoting Commonwealth v. Kohl, 615 A.2d 308, 315 (Pa. 1992)). If an officer performs a blood-draw search without a warrant, it is "unreasonable and therefore constitutionally impermissibile, unless an established exception applies. Exceptions to the warrant requirement include the consent exception. For the consent exception to apply, the consent must be voluntary." Id.

Appellant argues that the trial court erred in determining that his consent to the warrantless blood draw was voluntary. Appellant's Brief at 14. According to Appellant, the Commonwealth failed to carry its "burden of

establishing that the alleged consent is the product of an essentially free and unconstrained choice—not the result of duress or coercion, express or implied, or a will overborne—under the totality of the circumstances." Id. at 15.

Pennsylvania's Implied Consent Law provides that any person who drives a vehicle in the Commonwealth "shall be deemed to have given consent" to a blood draw if a police officer has reasonable grounds[3] to believe the person has been driving under the influence of a controlled substance. 75 Pa.C.S. § 1547(a). The Implied Consent Law sets forth numerous civil and evidentiary consequences of a person's refusal to consent to the testing authorized in Section 1547(a). 75 Pa.C.S. §§ 1547(b), (b.1), (b.2), (c), (e), (f), (g.1).[4] Additionally, the statute provides that any person arrested for

_____

[3] "Reasonable grounds" has been interpreted to mean "probable cause"; thus, the police officer must have "knowledge of sufficient facts and circumstances, gained through trustworthy information, to warrant a prudent man in the belief that a crime has been committed." Commonwealth v. Aiello, 675 A.2d 1278, 1280 (Pa. Super. 1996) (internal citations omitted). Appellant does not dispute that the traffic stop and his arrest were supported by probable cause.

[4] Pennsylvania's Implied Consent Law has recently changed:

Beginning on February 1, 2004, section 1547(b)(2)(ii) of the Motor Vehicle Code required a police officer to warn an individual arrested for suspected DUI that the individual's refusal to submit to a blood test would subject that individual to enhanced criminal penalties. 75 Pa.C.S.A. § 1547(b)(2)(ii) (West 2016). Officers followed that requirement by reading from PennDOT's Form DL–26, a portion of which tracked that statutory language. On June 23, 2016, the United States Supreme Court issued the Birchfield [v. North Dakota, ___ U.S. ___, 136 S.Ct. 2160 (2016)]

suspicion of DUI possesses an express "statutory right to refuse chemical testing." Commonwealth v. Myers, 164 A.3d 1162, 1170 (Pa. 2017); 75 Pa.C.S. §§ 1547(b)(1). Notwithstanding a defendant's express right to refuse a blood draw, the police do not have an affirmative duty to inform a defendant that he has a right to refuse a blood test without risking enhanced criminal penalties. Robertson, 186 A.3d at 447 (citing Commonwealth v. Smith, 77 A.3d 562 (Pa. 2013)); see also Commonwealth v. Cleckley, 738 A.2d 427 (Pa. 1999) (affirming denial of suppression where sole basis to suppress was lack of showing that defendant was aware of his right to refuse consent).

The Supreme Court's decision in Myers stands for the proposition that the implied consent statute does not itself serve as an exception to the warrant requirement; therefore, the voluntariness of an arrestee's consent must be evaluated under the totality of the circumstances: "Simply put, statutorily

_____

decision. One week later, PennDOT, at the request of the Pennsylvania District Attorneys Association and a number of county district attorneys, amended Form DL–26 to remove any reference to enhanced criminal penalties for the refusal to submit to a blood test. The new form is known as Form DL–26B.

Commonwealth v. Robertson, 186 A.3d 440, 443 n.1 (Pa. Super. 2018), appeal denied, 195 A.3d 852 (Pa. 2018) (internal quotation marks and citations omitted). With the enactment of Act 30 of 2017 on July 20, 2017, amending 75 Pa.C.S. § 3804 to comport with Birchfield, the DL-26B form conforms to statutory law. Id. at 445.

We observe that the case at hand is not a Birchfield case because the troopers did not advise Appellant that he would be subjected to greater criminal penalties if he refused the blood draw. The sole issue in this case is the voluntariness of Appellant's consent.

- 6 -

implied consent cannot take the place of voluntary consent."  Myers, 164 A.3d at 1178.

> While there is no hard and fast list of factors evincing voluntariness, some considerations include: 1) the defendant's custodial status; 2) the use of duress or coercive tactics by law enforcement personnel; 3) the defendant's knowledge of his right to refuse to consent; 4) the defendant's education and intelligence; 5) the defendant's belief that no incriminating evidence will be found; and 6) the extent and level of the defendant's cooperation with the law enforcement personnel.

Robertson, 186 A.3d at 447 (quoting Commonwealth v. Gillespie, 821 A.2d 1221, 1225 (Pa. 2003) (Eakin, J., opinion announcing the judgment of the court)).

On the record, the trial court specifically found "that [Appellant] was asked if he would consent to a blood draw and that he did indicate that he would consent to the blood draw. …  [Appellant] himself indicated he was never specifically threatened about the test."  N.T., 10/3/17, at 41, 42.  In its written opinion, the trial court explained its denial of suppression as follows:

> [Appellant] will likely assert that the following facts demonstrate that his consent was invalid: 1) he was not afforded a full explanation of his right to decline; 2) he had previously been placed under arrest for DUI; and, 3) he was "ordered around." Regarding number 3 the court has found that [Appellant] was asked if he would consent to a blood draw, he was cooperative and the troopers did not threaten him.  [Appellant's] assertion that he was not advised of his right to refuse is accurate.  The troopers did not explain that the U.S. and Pennsylvania Constitutions afforded him the right to decline the search. However, . . . an individual under arrest does not have to be specifically advised of the right to refuse a test in order for consent to be voluntary.  Commonwealth v. Cleckley, 738 A.2d 427, 428 (Pa. 1999).  [Appellant's] assertion that he was placed under arrest before he was transported to the hospital and, therefore, to

some extent was "ordered around," is also accurate. However, he was not ordered to take the test. The court has found credible Trooper Anderson's and Corporal Race's testimony that they asked [Appellant] to consent to the test and they did not threaten him or order him to provide a sample. [Appellant] was cooperative and agreed to provide a sample. He may regret that cooperation now but that does not change the fact that he voluntarily agreed to provide a sample. Therefore, considering all the facts and circumstances his consent was voluntary; and, his request for relief on appeal should be denied.

Trial Court Opinion, 9/6/18, at unnumbered 4.

Our review of the record confirms that Appellant, who was fifty years old at the time of his arrest, was cooperative and never wavered in his consent to the blood draw. N.T., 10/3/17, at 9, 20, 24. Nothing in the record suggests that Appellant lacked the education or intelligence to understand the procedures or believed no incriminating evidence would be found. Although Appellant was handcuffed upon his arrest, the cuffs were removed at the hospital. Id. at 29. The troopers did not threaten, coerce, or subject Appellant to duress. Id. at 32. They did not read Appellant the DL-26 form, which set forth the pre-Birchfield understanding of the consequences attached to refusal, nor did they otherwise discuss with Appellant the consequences of refusal. See Commonwealth v. Smith, 177 A.3d 915, 921–922 (Pa. Super. 2017) (holding that denial of suppression was proper when arresting officer never told the defendant that she would be subjected to greater criminal penalties if she refused the blood-draw).

Based on our review of the record and giving deference to the trial court's credibility determinations, we agree with the trial court's conclusion

that, under the totality of the circumstances, Appellant's consent was voluntary. Trial Court Opinion, 9/6/18, at unnumbered 4. The record supports the trial court's finding that Appellant consented, and its legal conclusion that suppression was not warranted is without error.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/11/2019