J-A11003-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                               :          PENNSYLVANIA
                               :
            v.                    :
                               :
                               :
LESLIE JOSEPH FREDERICK JR.    : 
                               :
           Appellant       :    No. 771 MDA 2019

Appeal from the Judgment of Sentence Entered April 22, 2019
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0004510-2018

BEFORE:   PANELLA, P.J., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.:        **FILED: JUNE 8, 2020**

Appellant, Leslie J. Frederick, Jr., appeals from his judgment of sentence entered by the Court of Common Pleas of Dauphin County for driving under the influence of alcohol ("DUI"), 75 Pa.C.S.A. § 3802(c). In his sole issue in this appeal, Appellant maintains the trial court erred by denying his motion to suppress his blood test results as those results were, according to Appellant, obtained in violation of ***Birchfield v. North Dakota***, --- U.S.---, 136 S.Ct. 2160, 195 L.Ed.2d 560 (2016). We disagree with Appellant that the trial court erred by denying his motion to suppress, and affirm his judgment of sentence.

---

[*] Former Justice specially assigned to the Superior Court.

This Court's standard of review regarding the denial of a suppression motion, such as Appellant's, is well-established and has been summarized as follows:

Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. The suppression court's legal conclusions are not binding on an appellate court, whose duty it [is] to determine if the suppression court properly applied the law to the facts. Thus, the [suppression court's] conclusions of law [ ] are subject to our plenary review.

Moreover, appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress.

**Commonwealth v. Shreffler,** 201 A.3d 757, 763 (Pa. Super. 2018) (citation omitted).

The Commonwealth and Appellant stipulated to a skeletal set of facts at the hearing regarding Appellant's motion to suppress. The parties stipulated that Appellant was arrested on June 9, 2018 for suspicion of DUI. Appellant was then read warnings from the Pennsylvania Department of Transportation's DL-26B "Chemical Test Warnings and Report of Refusal to Submit to a Blood Test as Authorized by Section 1547 of the Vehicle Code" form, which had been

updated in January of 2018 ("DL-26B consent form").[1] Those warnings informed Appellant that if he refused to consent to a blood test, his driver's license would be suspended and he would have to pay a fee of up to $2000 to restore the license. Appellant consented to the blood draw to test his blood to determine its blood alcohol concentration.

Following the suppression hearing, the trial court directed the parties to file a post-hearing brief regarding Appellant's claim that his blood test results should be suppressed on the basis that his consent had been unlawfully coerced by the DL-26B consent form's warnings pursuant to **Birchfield**. The court subsequently denied Appellant's motion to suppress on February 8, 2019.

The matter proceeded to a non-jury trial. The trial court found Appellant guilty of, *inter alia*, DUI and sentenced him to 12 months of intermediate punishment. Appellant filed this timely notice of appeal, challenging the trial court's conclusion that his consent to draw his blood had not been involuntarily given.

"It is black letter law that a criminal defendant can only validly consent to a search and seizure when that consent is given voluntarily and knowingly as contemplated by the Fourth Amendment to the United States Constitution

---

[1] This is the standard consent form police use when they seek the consent of a driver suspected of DUI to submit to a warrantless blood test. **See Commonwealth v. Krenzel**, 209 A.3d 1024, 1028 (Pa. Super. 2019).

and Article I, Section 8 of the Pennsylvania Constitution." ***Commonwealth v. Geary,*** 209 A.3d 439, 442 (Pa. Super. 2019). The administration of a blood test performed by an agent of, or at the direction of, the government, constitutes a search under both Constitutions. ***See Commonwealth v. Evans***, 153 A.3d 323, 328 (Pa. Super. 2016). "A search conducted without a warrant is deemed to be unreasonable and therefore constitutionally impermissible, unless an established exception applies." ***Commonwealth v. Strickler***, 757 A.2d 884, 888 (Pa. 2000). "One such exception is consent, voluntarily given." ***Id***.

In ***Birchfield***, the United States Supreme Court "refined the notion of consent in the context of intoxicated driving." ***Geary***, 209 A.3d at 442. One of the petitioners in ***Birchfield*** claimed that his consent to a blood test following his arrest for DUI had been coerced by the officer's warning that a refusal to submit to the blood test constituted a crime itself under North Dakota law. The Supreme Court agreed, concluding that "motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense." ***Birchfield***, 136 S.Ct. at 2186. As such, the Court held that criminal penalties imposed on individuals who refuse to submit to a warrantless blood test violate the Fourth Amendment (as incorporated into the Fourteenth Amendment). ***See id.*** at 2185-2186; ***Commonwealth v. Robertson***, 186 A.3d 440, 444 (Pa. Super. 2018), *appeal denied*, 195 A.3d 852 (Pa. 2018). If a defendant's explicit consent is found to have been

influenced by an improper criminal penalty for refusal, the court must assess the voluntariness of the consent under the totality of the circumstances. *See Birchfield*, 136 S.Ct. at 2186.

The *Birchfield* Court's holding, however, was limited to a prohibition against imposing additional *criminal* penalties for refusing a warrantless blood test. The Court explicitly announced that its holding did not apply to the imposition of civil penalties and evidentiary consequences upon motorists who refused a blood test. To that end, the Court stated:

> It is well established that a search is reasonable when the subject consents, and that sometimes consent to a search need not be express but may be fairly inferred from context. Our prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply. Petitioners do not question the constitutionality of those laws, and nothing we say here should be read to cast doubt on them.

*Birchfield*, 136 S.Ct. at 2185 (internal citations omitted).

Following *Birchfield*, Pennsylvania Governor Thomas Wolf signed into law Act 30 of 2017, Act of July 20, 2017, P.L. 333, No. 30 ("Act 30"), which amended Pennsylvania's Vehicle Code to comport with *Birchfield*. *See Robertson*, 186 A.3d at 445. Specifically, Act 30 provided for enhanced criminal penalties for individuals who refuse to submit to a blood test *only* when a warrant has been obtained for the individual's blood. *See id*.

Act 30 also amended 75 Pa.C.S.A. § 1547 ("Section 1547") of the Vehicle Code, commonly referred to as Pennsylvania's Implied Consent Law. Relevant to the instant case, Act 30 revised the heading of subsection (b) of

Section 1547 from "Suspension for refusal" to "Civil Penalties for refusal." Act 30 then added provisions to subsection (b), so that in addition to having their driver's license suspended for a refusal to consent to a blood test, motorists would face certain fees if they sought to restore their operating privilege following that suspension.[2] In relevant part, Section 1547 now reads:

> **(a)** **General rule.--** Any person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath or blood for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle in violation of section [...] 3802 (relating to driving under influence of alcohol or controlled substance) [.]
>
> **(b) Civil Penalties for refusal.--**
>
> (1) If any person placed under arrest for a violation of section 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person[.]
>
> * * *
>
> (2) It shall be the duty of the police officer to inform the person that:
>
> > (i) the person's operating privilege will be suspended upon refusal to submit to chemical testing and the person will be subject to a restoration fee of up to $2000[.]
>
> * * *

_____

[2] These particular amendments were to take effect in six months from the July 20, 2017 enactment date of Act 30, or on January 20, 2018.

**(b.2) Restoration Fees.--**

(1)  A person whose operating privilege has been suspended in accordance with subsection (b) […] shall:

(i) Except as provided in subparagraph (ii) or (iii), pay a restoration fee of $500.

(ii) If the department has previously suspended the person's operating privilege under this section on one occasion, pay a restoration fee of $1,000.

(iii) If the department has previously suspended the person's operating privilege under this section on two or more occasions, pay a restoration fee of $2000.

75 Pa. C.S.A. §1547 (emphasis in original).

In turn, the Pennsylvania Department of Transportation amended the DL-26 consent form to comply with **Birchfield**[3] and again to comply with Act 30. **See Robertson**, 186 A.3d at 444-445. Thus, the updated form, renamed the DL-26B consent form and dated January 2018, was the one read to Appellant. Paragraph three of that form now warns a motorist suspected of DUI that:

If you refuse to submit to the blood test, your operating privilege will be suspended for at least 12 months. If you previously refused a chemical test or were previously convicted of driving under the influence, your operating privilege will be suspended for up to 18 months. If your operating privilege is suspended for refusing

---

[3] Within one week of **Birchfield,** the Department of Transportation revised the DL-26 consent form to remove the warnings to a driver suspected of DUI that they would face enhanced criminal penalties if they refused to submit to the warrantless blood test. **See Robertson**, 186 A.3d at 444. This revision to the form is not at issue in this case.

chemical testing, you will have to pay a restoration fee of up to $2000 in order to have your operating privilege restored.

DL-26B(1-18) Form, Defendant's Motion to Suppress Evidence, Exhibit A.

Appellant claims this paragraph violated his rights under **Birchfield**. In rejecting Appellant's claim below, the trial court stated:

> At no point in time was [Appellant] advised he may be subject to enhanced criminal sanctions upon refusal of blood testing. Instead, [Appellant] was informed of the civil and administrative repercussions that would be imposed for failure to consent to blood testing pursuant to the amended DL-26[B consent] form. These civil and administrative repercussions, suspension of license and [up to] a $2000 restoration fee, were included within the third paragraph of the amended DL-26[B consent] form.

Trial Court Order, 2/8/2019, at 1 (footnote omitted).

Because the DL-26B consent form only informed Appellant of the civil and administrative penalties he faced should he refuse to consent to a blood test, the trial court found that it did not violate **Birchfield**'s directive prohibiting states from imposing criminal penalties upon a motorist's refusal to submit to a warrantless blood test. The trial court emphasized that **Birchfield** explicitly allowed states to impose civil penalties, such as the license suspension and restoration fee, for a refusal to submit to a warrantless blood test.

Appellant does not challenge the trial court's conclusion that the mandatory suspension of his license upon the refusal to submit to a warrantless blood test is a civil penalty for purposes of **Birchfield**. To be sure, that conclusion is entirely consistent with the case law from the courts of this

Commonwealth. ***See, e.g., Commonwealth v. Smith***, 177 A.3d 915, 921-922 (Pa. Super. 2017) (finding that DL-26B consent form's warning that a motorist's license would be suspended upon refusal to submit to a blood test was not criminal in nature and therefore did not run afoul of ***Birchfield***); ***Factor v. Cmwlth., Dept. of Transp,*** 199 A.3d 492, 500-501 (Pa. Cmwlth. 2018) (holding that a license suspension under Section 1547 is a civil penalty and not a criminal punishment for purposes of ***Birchfield***).

Rather, Appellant focuses solely on attacking the trial court's determination that the restoration fee is a civil, rather than a criminal, penalty. Appellant recognizes that the restoration fee is a discretionary one, only coming into play should a driver choose to seek restoration of his license following its suspension. Nonetheless, Appellant makes several arguments in support of his assertion that the fee, while not mandatory, is actually criminal in nature because the amount of the fee makes it "punishment veiled in an administrative fee." Appellant's Brief at 10. We are not persuaded by any of Appellant's arguments.

At the outset, we note that Act 30's amendments to Section 1547 plainly signal that the Pennsylvania General Assembly intended the restoration fee to be civil in nature. Prior to the enactment of Act 30, subsection (b) of Section 1547 was entitled "Suspension for refusal" and mandated that the Department of Transportation suspend the license of a driver upon refusal to submit to a chemical test. ***See Boseman v. Cmwlth., Dept. of Transp***., 157 A.3d 10,

17-21 (Pa. Cmwlth. 2017) (outlining pre-Act 30 version of Section 1547 and holding that a license suspension is a civil penalty).

Act 30 replaced the word "Suspension" in subsection (b)'s heading with "Civil penalties", so that the heading reads "Civil penalties for refusal." *See* Act of July 20, 2017, P.L. 333, No. 30, § 3. The Act then added provisions to subsection (b) regarding the restoration fee, and the specific amount of such a fee, that a driver would be subject to in order to restore a license suspended for refusing chemical testing. *See id.*; 75 Pa.C.S.A. § 1547 (b.2). Act 30 also added language to subsection (b) requiring a police officer to inform a driver suspected of DUI that in addition to having his license suspended for refusing to submit to chemical testing, the driver would face a restoration fee of up to $2000. *See* Act of July 20, 2017, P.L. 333, No. 30, § 3; 75 Pa.C.S.A. § 1547 (b)(2)(i).

Given this construct and plain language of the statute, it is clear that the General Assembly intended for the restoration fee to be one of the "civil penalties for refusal." *See Commonwealth v. Muniz*, 164 A.3d 1189, 1209 (Pa. 2017) (stating that courts must consider a statute's text and its structure when determining legislative intent); *A.S. v. Pennsylvania State Police,* 143 A.3d 896, 903 (Pa. 2016) (stating that a "statute's plain language generally provides the best indication of legislative intent").

Notwithstanding this plain language, Appellant argues that the General Assembly actually intended the restoration fee to be punitive. He contends

that this intent to punish is reflected by the fact that, although there is no evidence that the administrative costs associated with restoring a suspended license differ because of the reason behind the suspension, the General Assembly nonetheless made the restoration fee for a license suspended pursuant to Section 1547 significantly higher than the restoration fees for licenses suspended as a result of other Vehicle Code violations. This claim fails.

In making this argument, Appellant does not acknowledge what the courts of this Commonwealth have consistently identified as the intent behind Section 1547. Our Supreme Court has made clear that Section 1547 was enacted to address the hazard of intoxicated drivers on the road. *See* *Nardone v. Cmwlth., Dept. of Transp*., 130 A.3d 738, 747 (Pa. 2015). Likewise, the Commonwealth Court has stated unequivocally that the "General Assembly intended [Section 1547] as a civil penalty to protect Pennsylvanians by removing drunk drivers from the road." *Factor*, 199 A.3d at 500. The *Factor* Court explained:

> The objective of [Section 1547] is to protect the public by providing an effective means of denying intoxicated motorists the privilege of using the highways of this Commonwealth. A further purpose of [Section 1547] is to facilitate the acquisition of chemical analyses and to permit their utilization in legal proceedings. The mischief sought to be remedied by [Section 1547] is the number of fatalities and injuries which occur every day on our roads as a result of drivers operating vehicles under the influence of alcohol and/or drugs. The objective of preserving the life and death of this Commonwealth's motorists is most important, and the statute should be liberally construed to effect its objective and promote justice.

***Id.***, *quoting **Occibone v. Cmwlth., Dep't of Transp**.*, 645 A.2d 327, 330-331 (Pa. Cmwlth. 1994), *affirmed*, 669 A.2d 326 (Pa. 1995).

Appellant does not address these objectives, much less demonstrate how the General Assembly deviated from them by imposing a heightened fee for restoring one's license after it has been suspended for refusing chemical testing. Indeed, the fact that the fee is not a trivial one only facilitates Section 1547's non-punitive objectives of acquiring chemical testing and keeping drunk drivers off the road. Given these objectives, we cannot agree with Appellant's assertion that the General Assembly intended for the restoration fee to be a form of punishment rather than the non-punitive civil penalty it specifically categorized it as.

Appellant also essentially argues that even if the restoration fee was not intended to punish, it is punitive in effect. When considering such a claim, we are mindful that "only the clearest proof that a law is punitive in effect may overcome a legislative categorization to the contrary." ***Commonwealth v. Mullins***, 905 A.2d 1009, 1017 (Pa. Super. 2006) (citation omitted). In support of his claim here, Appellant asserts that the "up to $2000" fee is "unaffordable" for some Pennsylvanians and is therefore punitive because it effectively constitutes a "lifelong" ban on their "right and need" to drive. Appellant's Brief at 10-11. This claim also fails.

In the first place, we reject Appellant's argument that this Commonwealth views driving as a right. "Our courts have established that

- 12 -

driving is a privilege, not a fundamental right." ***Commonwealth v. Bell***, 167 A.3d 744, 747 (Pa. Super. 2017), *affirmed,* 211 A.3d 761 (Pa. 2019), *cert. denied*, 140 S.Ct. 934 (U.S. Jan.21, 2020); ***see also Renfroe v. Cmwlth., Dep't of Transp***., 179 A.3d 644, 648 (Pa. Cmwlth. 2018) (stating that it is well-settled that driving in Pennsylvania is a privilege and not a right).

In spite of this precedent, Appellant argues that our Supreme Court's decision in ***Shoul v. Cmwlth., Dept. of Transp***., 173 A.3d 669 (Pa. 2017), "moved away from this pattern" and recognized "a citizen's right and need to drive a motor vehicle." Appellant's Brief at 10. Contrary to Appellant's assertions, ***Shoul*** did not hold that the commercial driver's license at issue in that case was a fundamental right and in fact, Justice Wecht's concurrence explicitly pointed out that the majority "reaffirm[ed] that a commercial driver's license is a *privilege* and *not a fundamental right*." ***Id.*** at 688 (concurrence)(emphasis added).[4]

---

[4] To the extent Appellant attempts to rely on ***Shoul*** to support his argument that the restoration fee constitutes a criminal sanction, we note that the circumstances in ***Shoul*** were materially different from those in the instant case. In ***Shoul***, the appellee argued that the lifetime disqualification from holding a commercial driver's license based on his conviction for drug crimes while using a motor vehicle violated his substantive due process rights and constituted cruel and unusual punishment. ***See id.*** at 674. Appellant makes no such claims regarding the restoration fee for the temporary suspension of his non-commercial driver's license in the instant case.

Our Supreme Court has repeatedly stated that to obtain the benefit of the privilege of driving, a driver must abide by the laws of this Commonwealth related to that privilege. *See, e.g., Alexander v. Cmwlth., Dept. of Transp*., 880 A.2d 552, 561 (Pa. 2005) . Those laws include Section 1547, which clearly sets out the civil penalties - the suspension of one's driving privilege and a set fee to restore that privilege - for a driver's refusal to submit to a blood test when he is suspected of DUI. The fact that a person may not have the ability to pay such a fee to restore his driving privilege simply does not, contrary to Appellant's assertion, convert that fee into a criminal sanction. As the Commonwealth states in its appellate brief:

> That the civil penalty imposed by [Section 1547] would be a substantial burden on [some], and that [their] inability to operate a motor vehicle until such a time as [they] can pay the [restoration fee] would be disruptive to [their] life, is not determinative where the penalty is clearly civil in nature.

Commonwealth's Brief at 9. Appellant has simply failed to provide proof, much less the "clearest proof," that the restoration fee legislatively categorized as a civil penalty constitutes criminal punishment in its effect. *Mullins*, 905 A.2d at 1017.[5]

_____

[5] Appellant also cites to *Commonwealth v. Wall*, 867 A.2d 578 (Pa. Super. 2005), to support his contention that the restoration fee amounts to criminal punishment. In *Wall*, the appellant argued that the $200 assessment imposed on defendants convicted of DUI with a blood alcohol concentration higher than a certain percentage constituted increased punishment for purposes of determining whether an *ex post facto* violation had occurred. This Court agreed, holding that because the assessment imposed as part of the

Based on all of the above, we agree with the trial court that the restoration fee is civil rather than criminal in nature. We therefore also agree with the trial court that the DL-26B consent form warning Appellant of the civil penalties he faced should he refuse to submit to a blood test, including the restoration fee, complied with the dictates of **Birchfield**. As this was the sole basis on which Appellant challenged the validity of his consent to the blood test, the trial court properly denied Appellant's motion to suppress the results of that test.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/08/2020

---

appellant's sentence was a direct consequence of his guilty plea to the DUI charge, it constituted increased punishment. In stark contrast to the assessment in **Wall**, the restoration fee at issue here is imposed following a license suspension pursuant to Section 1547, which is a separate civil proceeding from a criminal DUI proceeding arising from the same incident. **See Boseman**, 157 A.3d at 20.