J-S03011-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOHN HOLLIS REYNOLDS 4TH | : | |
| | : | |
| Appellant | : | No. 566 MDA 2023 |

Appeal from the Judgment of Sentence Entered February 16, 2023
In the Court of Common Pleas of Adams County Criminal Division at
No(s): CP-01-CR-0000056-2022

BEFORE: OLSON, J., NICHOLS, J., and BECK, J.

MEMORANDUM BY OLSON, J.: **FILED: FEBRUARY 14, 2024**

Appellant, John Hollis Reynolds, IV, appeals from the February 16, 2023 judgment of sentence entered in the Court of Common Pleas of Adams County, following his non-jury trial conviction for several driving under the influence ("DUI") offenses and two motor vehicle summary offenses, as more fully discussed herein. Counsel for Appellant, Jamison Entwistle, Esquire ("Attorney Entwistle") filed an **Anders** brief[1] and a petition to withdraw as counsel. We affirm the judgment of sentence and grant the petition to withdraw.

---

[1] **Anders v. California**, 386 U.S. 738 (1967); **see also Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009); **Commonwealth v. McClendon**, 434 A.2d 1185 (Pa. 1981).

The trial court summarized the procedural and factual history of this case as follows:

[Immediately] before [the start of Appellant's] bench trial on July 26, 2022, Appellant petitioned the [trial] court to discharge his [trial] counsel. Appellant did not like the advice [trial] counsel had given him concerning his plea or his desire to testify. Additionally, Appellant claimed that [trial] counsel had not requested evidence Appellant thought important for his defense. Specifically, Appellant wanted to subpoena [a motor vehicle recording ("MVR")] that he thought would show [that a] police [officer returned] Appellant [to his vehicle] after he had been taken to the hospital [for a blood draw]. However, the only MVR of the incident ended at the hospital and did not show anything that happened afterwards. [Trial] counsel explained that the issues Appellant wanted to raise were without merit or were not relevant. Appellant stated, "I'm not comfortable with [trial counsel]. I do not believe he has my best interest at heart." The [trial] court explained to Appellant that he could either proceed *pro se* or with [current trial] counsel, but new counsel would not be provided for trial. After Appellant stated that he did not know enough to represent himself, the [trial] court told Appellant that [current trial] counsel would continue to represent him.

At the bench trial, the following facts were revealed. On October 5, 2021, Appellant was in Adams County, [Pennsylvania,] driving southbound on [United States] Route 15 at approximately 12:46 p.m. when Pennsylvania State Trooper Matthew Duncan [("Trooper Duncan")] observed that [the] passenger [side] brake light [on Appellant's vehicle] was inoperable[,] and Appellant was exceeding the posted speed of 65 miles per hour ("mph"). Trooper Duncan paced Appellant's [vehicle] for three-tenths of a mile. Trooper Duncan was driving [his police cruiser at] 80 [mph], and Appellant was gaining distance in front of [the police cruiser]. At that time, Trooper Duncan activated his [police cruiser] lights and pulled Appellant over.

Trooper Duncan had undergone standardized training to detect individuals who were under the influence of controlled substances and Advanced Roadside Impaired Driving Enforcement ("ARIDE")[] training which teaches officers to detect impairment from [controlled substances] rather than just alcohol.

When Trooper Duncan spoke with Appellant, he noticed loose green particles of leaf marijuana, [*i.e.,*] marijuana shake, on Appellant's lap and chest. He also detected an odor of burnt marijuana. Trooper Duncan [] observed that Appellant had bloodshot eyes. Based on these observations, Trooper Duncan asked Appellant whether he [] recently ingested or was currently ingesting marijuana. Appellant responded that he [] ingested marijuana prior to driving. Appellant also gave Trooper Duncan a clear ziploc bag of leaf marijuana when Trooper Duncan asked whether there was any marijuana in [Appellant's vehicle].

Trooper Duncan then asked Appellant to exit the vehicle to perform standard field sobriety tests. Appellant was initially unable to maintain his balance. He also did not take the right number of steps during the walk-and-turn [test] before he turned. During the one-leg test, where a person stands on one leg, Appellant used his arms for balance and swayed. During the modified Romberg test, a person should be able to follow a stimulus with their eyes, but Appellant could not follow the stimulus equally with both eyes. Additionally, Trooper Duncan noticed Appellant's eyes involuntarily jerked when Appellant had his eyes closed, which happens when a stimulant or narcotic impairs the nervous system.

After the field [sobriety] tests were conducted, Trooper Duncan did not think Appellant could safely operate a vehicle and believed that Appellant was under the influence of a controlled substance that impaired his ability to drive safely. Trooper Duncan then placed Appellant under arrest and took him to [a hospital], where Appellant submitted to a blood [draw]. Appellant's blood [sample] was then sealed and packed for transport and sent to [a laboratory] for forensic testing.

Dr. Stephanie Marco works at [the laboratory] and analyzed Appellant's blood [sample]. Appellant's blood [sample contained the presence of] marijuana, a Schedule I controlled substance, active metabolites of marijuana, and a metabolite of cocaine, a Schedule II controlled substance.

[At trial,] the [trial] court explained to Appellant that he had the right to remain silent and that if he chose not to testify [at trial,] no negative inferences could be drawn about his guilt or innocence. Appellant had the opportunity to speak with [trial] counsel regarding the decision to testify. Appellant chose to [testify].

Appellant was asked what he would like to share with the [trial] court about the incident in question. Appellant disclosed that he is an everyday marijuana user and used it to self-medicate, despite having no official prescription. Appellant admitted that he did not know exactly what substance he [] purchased in [the state of] New York and [] smoked the night before he was arrested. Appellant testified that he was not aware that under Pennsylvania law metabolites in the blood were sufficient to prove [DUI] and[,] if he had known[,] he would not have consented to a blood draw.

During cross-examination, the Commonwealth asked Appellant when he last used cocaine. [Trial] counsel objected that the question was outside the scope of Appellant's testimony on direct and advised Appellant not to answer the question. However, the Commonwealth's expert [] already testified to the presence of cocaine metabolites in Appellant's blood and the laboratory test results confirming the presence of cocaine metabolites in his blood had been admitted. The Commonwealth argued that the question went toward an element of the crime charged[,] and Appellant had already spoken about his marijuana use. As [Appellant] was subject to cross[-]examination, the Commonwealth could fairly question [Appellant] about his marijuana use and other substances in his blood. The [trial] court overruled the objection. Appellant then testified that the night before, in New York, he had been in a room with people who were smoking cocaine. Although Appellant said that he did not personally partake [in smoking cocaine], he theorized that the [blood] test results showing [the presence of] cocaine were based on his second-hand inhalation of the smoke. Appellant also admitted to using marijuana the night before he was arrested.

Trial Court Opinion, 6/19/23, at 1-4 (extraneous capitalization omitted).

At the conclusion of the non-jury trial, the trial court convicted Appellant of DUI – Schedule I controlled substance (marijuana) (Count 1); DUI – metabolite of Schedule I controlled substance (marijuana) (Count 3); DUI – under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive (Count 4); maximum speed

limits – 65 mph, a summary offense (Count 6); and general lighting requirements – rear lighting, a summary offense (Count 7).[2]

On February 16, 2023, Appellant was sentenced as follows: On Count 1, Appellant was sentenced to time-served to 6 months' incarceration with credit given for the periods of February 24, 2022, to February 28, 2022, and January 18, 2023, to February 16, 2023.[3] The trial court ordered Appellant be released on parole upon approval of a house plan. Appellant was also ordered to undergo a drug and alcohol evaluation and comply with any recommended treatment, complete alcohol safe driving school, pay a fine of $1,000.00, and pay the costs of prosecution in the amount of $2,558.21. On Count 6, the trial court ordered Appellant to pay a fine of $72.50 and the costs of prosecution. On Count 7, the trial court ordered Appellant to pay a fine of $25.00 and the costs of prosecution. *See* Sentencing Order, 2/16/23.

On March 27, 2023, the trial court granted trial counsel's motion to withdraw from his representation of Appellant. That same day, Appellant filed *pro se* a petition pursuant to the Post Conviction Relief Act ("PCRA"), 42

---

[2] 75 Pa.C.S.A. §§ 3802(d)(1)(i), 3802(d)(1)(iii), 3802(d)(2), 3362(a)(1.1), and 4303(b), respectively.

Appellant was also charged with DUI – Schedule II controlled substance (cocaine) (Count 2), and possession of a small amount of marijuana for personal use. 75 Pa.C.S.A. § 3802(d)(1)(ii) and 35 P.S. § 780-113(a)(31)(i), respectively. Prior to the start of trial, the Commonwealth withdrew Counts 2 and 5. N.T., 7/26/22, at 6, 9

[3] For the purpose of sentencing, Counts 3 and 4 merged with Count 1.

Pa.C.S.A. §§ 9541-9546.[4]  Appellant also filed *pro se* a motion for the appointment of new counsel for the purpose of pursuing a direct appeal on March 27, 2023.[5]

On March 30, 2023, the trial court reinstated Appellant's right to file a direct appeal and appointed Attorney Entwistle to represent Appellant.  Trial Court Order, 3/30/23.  On April 10, 2023, Appellant filed a counseled notice of appeal with this Court.  On April 19, 2023, the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b).  Trial Court Order, 4/19/23.

In *pro se* correspondence directed to the trial court on May 8, 2023, Appellant requested the appointment of new counsel.  *Pro Se* Letter, 5/8/23.

_____

[4] Appellant's *pro se* PCRA petition was timestamped as having been received by the PCRA court on March 29, 2023.  The envelope that Appellant used to mail his petition does not reveal a postage cancellation stamp.  A review of Appellant's petition, however, reveals that Appellant included a proposed trial court order that was dated March 27, 2023.  Pursuant to the "prisoner mailbox rule," we deem Appellant's PCRA petition as filed on March 27, 2023.  **See Commonwealth v. Jones**, 700 A.2d 423, 426 (Pa. 1997) (explaining that, pursuant to the "prisoner mailbox rule," a document is deemed filed on the date an inmate deposits the mailing with prison authorities or placed it in the prison mailbox).

[5] Appellant's motion for the appointment of new counsel was timestamped as having been received by the trial court on March 29, 2023.  The envelope that Appellant used to mail his motion, however, bears a postage cancellation stamp dated March 27, 2023.  Pursuant to the "prisoner mailbox rule," we deem Appellant's motion for the appointment of new counsel as filed on March 27, 2023.  **See Jones**, 700 A.2d at 426.

Appellant asserted that Attorney Entwistle maintained a conflict of interest due to his law firm's "partnership" with the public defender's office for Adams County. *Id.* Appellant further claimed that Attorney Entwistle was ineffective in advising Appellant on his now-simultaneous pursuit of both a direct appeal and a petition seeking collateral relief. *Id.* Appellant explained that he instructed Attorney Entwistle to pursue the PCRA petition. *Id.* at ¶3.

That same day, May 8, 2023, the trial court denied Appellant's request for the appointment of new counsel. Trial Court Order, 5/8/23. In its order, the trial court explained that "[Appellant] legally may not pursue both a direct appeal from his conviction and PCRA actions simultaneously. Given [Appellant's] previous *pro se* filings of both a direct appeal and a PCRA matter[, Attorney Entwistle's] advice that [Appellant] must [choose] which course of action he wishe[d] to pursue at this time [was] entirely correct." *Id.*

On May 10, 2023, Attorney Entwistle filed a motion, with this Court, to withdraw from representation of Appellant. Motion to Withdraw, 5/10/23. In a May 12, 2023 *per curiam* order, this Court remanded the case to the trial court for a ***Grazier*** hearing[6] to determine whether Appellant wished to proceed *pro se* or continue to be represented by current counsel.[7] *Per Curiam*

---

[6] ***Commonwealth v. Grazier***, 713 A.2d 81 (Pa. 1998).

[7] Meanwhile, pursuant to the "prisoner mailbox rule," (***see Jones***, ***supra***), on May 11, 2023, Appellant filed *pro se* with this Court (1) a motion for an

- 7 -

Order, 5/12/23. In the interim, the trial court, on May 10, 2023, scheduled a hearing on Attorney Entwistle's motion to withdraw for May 18, 2023. Trial Court Order, 5/10/23. On May 23, 2023, the trial court, having conducted a hearing on May 18, 2023, granted Appellant's request to withdraw his *pro se* PCRA petition and to proceed solely with his direct appeal.[8] Trial Court Order, 5/23/23. Thereafter, Appellant's counsel filed a Rule 1925(b) statement, and the trial court filed its Rule 1925(a) opinion on June 19, 2023.

Preliminarily, we must address Attorney Entwistle's petition to withdraw and the accompanying **Anders** brief, both alleging this appeal is without merit. **Anders** Brief at 26. "When presented with an **Anders** brief, this Court may not review the merits of the underlying issues without first passing on

_____

extension of time to resolve the matter of the pending PCRA petition and the direct appeal; (2) a motion for the appointment of new counsel; and (3) a motion to withdraw his direct appeal without prejudice to allow him to pursue his petition for collateral relief. In a July 26, 2023 *per curiam* order, this Court directed the prothonotary of this Court to forward copies of Appellant's aforementioned motions to Appellant's counsel of record. *Per Curiam* Order, 7/26/23.

[8] In its May 23, 2023 order, the trial court stated,

> As indicated, both a direct appeal from his sentence imposed [on] February 16, 2023[,] and a *pro se* PCRA petition are pending. As the PCRA petition is untimely due to the pending direct appeal, after consultation with appointed counsel and following a lengthy on-the-record colloquy, [Appellant] moved to withdraw the PCRA petition. That request is granted. The PCRA petition is withdrawn. [Appellant] may proceed with his direct appeal.

Trial Court Order, 5/23/23.

the request to withdraw." ***Commonwealth v. Daniels***, 999 A.2d 590, 593 (Pa. Super. 2010) (citation omitted). In order to withdraw pursuant to ***Anders***, "counsel must file a brief that meets the requirements established by our Supreme Court in [***Santiago***, ***supra***]." ***Commonwealth v. Harden***, 103 A.3d 107, 110 (Pa. Super. 2014) (parallel citation omitted). Specifically, counsel's ***Anders*** brief must comply with the following requisites:

> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, [and] statutes on point that have led to the conclusion that the appeal is frivolous.

***Id.*** (citation omitted).

Pursuant to ***Commonwealth v. Millisock***, 873 A.2d 748 (Pa. Super. 2005), and its progeny, "[c]ounsel also must provide a copy of the ***Anders*** brief to his [or her] client." ***Commonwealth v. Orellana***, 86 A.3d 877, 880 (Pa. Super. 2014) (internal quotation marks and citation omitted). The brief must be accompanied by a letter that advises the client of the option to "(1) retain new counsel to pursue the appeal; (2) proceed *pro se* on appeal; or (3) raise any points that the appellant deems worthy of the court[']s attention in addition to the points raised by counsel in the ***Anders*** brief." ***Id.*** "Once counsel has satisfied the above requirements, it is then this Court's duty to

conduct its own review of the trial court's proceedings and render an independent judgment as to whether the appeal is, in fact, wholly frivolous." *Commonwealth v. Goodwin*, 928 A.2d 287, 291 (Pa. Super. 2007) (*en banc*) (citation and internal quotation marks omitted).

Instantly, Attorney Entwistle satisfied the technical requirements of *Anders* and *Santiago*. In his *Anders* brief, counsel identified the pertinent factual and procedural history and made citation to the record. Counsel raises three issues challenging Appellant's judgment of sentence that could arguably support an appeal, but ultimately, counsel concludes the appeal is wholly frivolous. *See Anders* Brief at 26. Counsel also attached to his petition a letter to Appellant that fulfills the notice requirements of *Millisock*. Appellant has not filed a response to counsel's letter, the *Anders* brief, or the petition to withdraw.[9] Accordingly, we proceed to conduct an independent review of the record to determine whether the appeal is wholly frivolous.

_____

[9] Pursuant to the "prisoner mailbox rule," (*see Jones*, *supra*), on January 27, 2024, Appellant filed *pro se* with this Court a letter in which he states that Attorney Entwistle "was **never** authorized or directed to" file a notice of direct appeal but, rather, was "repeatedly directed to file" a PCRA petition. *Pro Se* Letter, 1/27/24. In his correspondence, Appellant requests this Court permit Appellant to withdraw his direct appeal without prejudice in order that he may first pursue collateral relief. *Id.* Upon review, we do not find Appellant's correspondence to be a response to Attorney Entwistle's letter, the *Anders* brief, or the petition to withdraw.

Once Appellant has exhausted his direct appeal rights and his judgment of sentence becomes final, Appellant will have one year from the date his judgment of sentence becomes final to present a timely PCRA petition. *See* 42 Pa.C.S.A. § 9545(b)(1). As such, we will take no further action on

- 10 -

In the ***Anders*** brief, counsel raises the following issues for our review:

[1.]  [Whether] the trial court abused its discretion or committed an error of law in refusing [Appellant's] oral motion prior to trial for the appointment of alternative counsel when [Appellant] cited a breakdown in the attorney-client relationship to such a degree that trial counsel could not effectively represent [Appellant?]

[2.]  [Whether] the trial court abused its discretion or committed an error of law in overruling [trial] counsel's objection to testimony which was beyond the scope of [Appellant's] direct examination resulting in incriminating testimony (***see*** [N.T., 7/26/22, at] 56-57)[?]

[3.]  [Whether] the trial court abused its discretion or committed an error of law when it found [Appellant] guilty of [DUI] pursuant to 75 Pa.C.S.A. [§§ ]3802(d)[(1)](i), [3082](d)[(1)](iii), and (d)(2) [on the grounds] the verdict was against the weight and sufficiency of the evidence[?]

***Anders*** Brief at 15-16 (extraneous capitalization omitted).[10]

The first issue presented in the ***Anders*** brief challenges the trial court's denial of Appellant's oral request, prior to the start of trial, for the appointment of new counsel on the ground that there was a breakdown in the attorney-client relationship. ***Anders*** Brief at 34-38. Counsel asserts, on behalf of Appellant, that arguably, the trial court erred in denying Appellant's request for the appointment of new counsel but, ultimately, counsel concludes

_____

Appellant's *pro se* correspondence other than to direct the prothonotary of his Court to forward a copy of the correspondence to Appellant's counsel of record.

[10] For ease of review, we have reorganized the issues presented in the ***Anders*** brief.

that this issue is frivolous. *Id.* As counsel explains, Appellant sought new trial counsel because his then-current trial counsel refused to obtain exculpatory evidence, namely MVR evidence or dispatch/global positioning system records for Trooper Duncan's police cruiser from the evening of the incident, that Appellant maintained would demonstrate Trooper Duncan returned Appellant to his vehicle after the blood draw at the hospital. *Id.* at 36-37. Counsel stated that if such evidence did exist, and was presented at trial, it would have arguably demonstrated "some merit related to whether or not [Trooper Duncan] believed Appellant was impaired to a degree he could not safely operate a motor vehicle." *Id.* at 37.

It is well-established that "[a]lthough the right to counsel is absolute, there is no absolute right to a particular counsel." *Commonwealth v. Tyler*, 360 A.2d 617, 619 (Pa. 1976) (stating, "an indigent [defendant] is entitled to [appointed (free)] counsel but **not** entitled to [appointed] counsel of his[, or her,] choice" (emphasis in original)). We review the denial of a request for the appointment of new counsel for an abuse of discretion, as the decision whether to deny, or grant, such a request rests within the sound discretion of the trial court. *Commonwealth v. Cook*, 952 A.2d 594, 617 (Pa. 2009).

Pursuant to Pennsylvania Rule of Criminal Procedure 122(C), "[a] motion for change of counsel by a defendant for whom counsel has been appointed shall not be granted except for substantial reasons." Pa.R.Crim.P. 122(C). Case law has established that "substantial reasons" require the defendant to demonstrate that he or she has an "irreconcilable difference"

- 12 -

with counsel that precludes counsel from representing the defendant. *See Commonwealth v. Wright*, 961 A.2d 119, 134 (Pa. 2008); *see also Tyler*, 360 A.2d at 619; *Commonwealth v. Spotz*, 756 A.2d 1139, 1150 (Pa. 2000); *Commonwealth v. Andrews*, 287 A.3d 869, 2022 WL 9663426, at *7 (Pa. Super. filed Oct. 17, 2022) (unpublished memorandum), *appeal denied*, 296 A.3d 561 (Pa. 2023).

In denying Appellant's request for the appointment of new counsel, the trial court stated,

> In this case, Appellant did not like the advice appointed [trial] counsel gave him regarding whether he should plead guilty or testify. Appellant also did not think that [trial] counsel was gathering evidence that Appellant wanted to present. Specifically, Appellant wanted to show MVR evidence that Trooper Duncan [returned] him [to] his [vehicle] after Appellant was taken to the hospital. However, the MVR ends at the hospital where Appellant was waiting to get his blood drawn and there is no MVR of what happened after the hospital. [Trial] counsel also explained to Appellant that several issues Appellant wanted to raise were irrelevant, and Appellant did not agree with that assessment. Appellant stated, "I'm not comfortable with him. I do not believe he has my best interest at heart."
>
> Although Appellant was clearly dissatisfied with appointed [trial] counsel, his words do not show that he had "irreconcilable differences" with counsel. Rather, they only convey a "mere dissatisfaction." Appellant had a different, albeit futile, trial strategy where he wanted to pursue evidence that either did not exist or was not relevant. He lacked confidence in [trial] counsel's ability, but that is not sufficient to rise to the level of "irreconcilable differences." In [the trial] court's experience, [trial] counsel is experienced and thorough.

Trial Court Opinion, 6/19/23, at 10 (extraneous capitalization omitted).

A review of the record demonstrates the following exchange prior to the start of Appellant's trial,

| | |
|---|---|
| [Trial Court:] | All right. [Appellant], what is the issue with the representation here? |
| [Appellant:] | Borderline having an anxiety attack. |
| [Trial Court:] | Pardon me? |
| [Appellant:] | I'm just starting[ - ]just having a borderline anxiety attack. |
| [Trial Court:] | So you want to discharge your attorney[?] |
| [Appellant:] | Yes. I do[,] on the grounds that I have been speaking to [trial counsel] for two months about evidence that I would like to subpoena for myself on my behalf for my defense[,] and I have not had any opportunities to [do so]. I've got [electronic mail ("e-mail")] after e-mail after e-mail. [Trial counsel] will not articulate a defense for me. He told me to plea[d] guilty or testify. Neither of which I talked [about with him]. He did not help me to prepare for [my] defense at all. |
| [Trial Court:] | This is a first offense DUI on a bench trial. You said you wish to subpoena witnesses on your behalf? |
| [Appellant:] | No, evidence from the same incident. I was dropped back off at [my] vehicle with my keys. There was questionable - [a] list of issues I can give you the e-mails to - |
| [Trial Court:] | That can all be presented at trial if it's relevant to - |
| [Appellant:] | Yes, that's - |
| [Trial Court:] | - the elements of the offense. |
| [Appellant:] | That's what I'm seeking, yes, and I have not been allowed to have any assistance or, what's |

the word, cooperation from my attorney with this.

[Trial Court:]      Trial counsel], do you know any of these issues with regard to subpoenaing evidence?

[Trial Counsel:]      Yes, Your Honor. [Appellant] brought up several issues with me over the last several months. I have vetted these issues with him. They are without merit. I have not moved forward on those issues, as the [trial] court [] indicated, based on the lack of relevance to the issues involved today.

I have been trying to work with [Appellant] to prepare for today. I've inquired about whether he intends to testify. He's refused to answer those questions and [to] work with me on those issues because we seemed to have reached a middle ground where we just can't resolve our issues when he's bringing forward issues that I can't bring forward to the [trial] court because of the relevance.

[Trial Court:]      All right.

[Appellant:]      I have something to say to that if I have an opportunity.

[Trial Court:]      Pardon me?

[Appellant:]      I have something to say to that if I have an opportunity.

[Trial Court:]      Go ahead.

[Appellant:]      I think the credibility of the witness's report is very relevant. I also think the grounds of the blood draw are very relevant and there's much - there's - I was dropped back off at [my vehicle] with the keys and allowed to drive home. I was clearly not suspected of intoxication if I was allowed to do that.

Just several things that [have] happened in the case which kind of show that this case was put together with an instruction to come around to

fit the charge, the possession of marijuana charge and the possession of a small amount [of marijuana charge.]

. . .

[Trial Court:]    Again, those are all issues that I can[,] well[,] entertain at trial through evidentiary testimony, whether it's you or it's cross-examination of other witnesses, but I don't see any grounds based on that to [do] what you're suggesting right now[,] to discharge counsel, especially if we're ready for trial right now.

[Appellant:]    Well, my grounds are as that you even as the Judge found irrelevant to be examined during trial[,] and I have had no time to prepare with my attorney to -

[Trial Court:]    You've had adequate time. This case was - you were transported - there was a transport order back in February [2023, a] bench warrant [issued on] February 28[, 2023,] arraignment [was on] March 21[, 2023,] a plea day [was set for] May 16[, 2023, and now we're here on July 26[, 2023,] for a bench trial and there's been more than enough time. So, again, I'm going to deny your motion to discharge the attorney.

[Appellant:]    I'm not being represented by this attorney. I fire him. I'm not going to be represented -

[Trial Court:]    You want to represent yourself in this case?

[Appellant:]    I'm not prepared.

[Trial Court:]    Well, you have those two choices. You have [trial counsel] represent you and he's prepared and he's well-experienced. He appears in court all the time on these types of cases[,] or you can represent yourself, but it's today. You've had more than enough time. We have a roomful of witnesses and parties here to proceed to trial. Today's your trial.

[Appellant:]    If there was more evidence that I was trying to subpoena on my behalf and I have not been -

| [Trial Court:] | I have yet to hear about any evidence that you think you need to subpoena. |
|---|---|
| [Appellant:] | There's a video of [Trooper Duncan] pulling me off to the side of the highway and getting my keys in my [vehicle] to leave after the blood draw. |
| [Trial Court:] | Again, that's testamentary.  I don't know if there's an MVR in the case or not. |
| [Appellant:] | There's not.  There's not a video of that and wasn't provided.  That's what I'm seeking.  I have a date and a time.  I just need the - |
| [Trial Court: | Appellant], if there's not a video, it's not going to be provided to you then, is it? |
| [Appellant:] | I can subpoena one, because - |
| [Trial Court:] | No, you can't if it doesn't exist, sir. |
| [Appellant:] | I have a date and a time I'm requesting. |
| [Trial Court:] | You want to represent yourself today and you think you know enough to do so? |
| [Appellant:] | I don't think I know enough to do so. |
| [Trial Court: | Trial counsel] is representing you.  We're going to have a trial.  You can have a seat, sir. |
| [Appellant:] | I decline to be represented by him. |
| [Trial Court:] | You don't have that choice. |
| [Appellant:] | Then – |
| [Trial Court:] | You just stated you do not know enough to represent yourself so, therefore, I cannot legally allow you to proceed *pro se* as your own attorney. |
| [Appellant:] | I'm firing [trial counsel].  I'm not comfortable with him.  I do not believe he has my best interest at heart.  I'm not gonna testify. |
| [Trial Court:] | You don't have to testify.  That's your right. Have a seat, sir. |

First witness.

N.T., 7/26/22, at 3-9.

In the case *sub judice*, trial counsel was appointed to represent Appellant and, while Appellant has the right to counsel, he does not have the right to "fire" court-appointed counsel and secure new representation without substantial reasons. In seeking court approval for the appointment of new counsel, Appellant failed to demonstrate "substantial reasons" or "irreconcilable differences" that precluded trial counsel from representing him. Rather, Appellant displayed mere dissatisfaction with trial counsel because, according to Appellant, trial counsel failed to obtain certain MVR evidence that Appellant believed existed and would exonerate him. Trial counsel, fully aware of Appellant's belief that such evidence existed and his desire to obtain such evidence, did not believe that the evidence, in fact, existed and did not feel, even if it did exist, that it was relevant to the issues at hand. At the time of Appellant's request for new counsel, trial counsel was prepared to proceed to trial. Moreover, at trial, trial counsel elicited testimony from Appellant that he was returned to his vehicle after the blood draw and that he recovered his vehicle keys from Trooper Duncan, which, according to Appellant, demonstrated that Trooper Duncan did not believe Appellant to be impaired **at that time** such that he could not operate his vehicle.[11] ***See*** N.T., 7/26/23,

_____

[11] In response to trial counsel's inquiry, Appellant stated,

_____

> The fact that I would like to present and have looked at is that after the traffic stop, after the blood draw, I was dropped [] off at my vehicle and handed the keys by [Trooper Duncan] out of [the] passenger side window [of the police cruiser]. The date and time will be recoverable when I called the [Adams County] police department and asked them where my keys were as [Trooper Duncan] was pulling up that minute. So the date and time that I placed a call to the Adams County police [department] inquiring about my keys to my vehicle will be where there will be evidence of my keys being returned to me and me being allowed to drive, which I think contradicts [Trooper Duncan's] testimony of his alleged accusation he believed I was impaired.

N.T., 7/26/22, at 53 (extraneous capitalization omitted).

We further note that on cross-examination, the Commonwealth asked Appellant, "Was it [Trooper Duncan] that dropped you off at your car and gave you your keys?" *Id.* at 55. In response, Appellant stated,

> He dropped me off on an overpass a quarter mile away and told me I could walk to my vehicle, which I did, and he did not drop me off at the hospital as [he] alleged he did, or not the hospital, the hotel where a gas station where he claimed he would be dropping me off, if the tapes are viewed[.]

*Id.* at 55-56.

Trooper Duncan testified that after the blood draw concluded at the hospital, he drove Appellant to a near-by hotel and released him pursuant to Pennsylvania Rule of Criminal Procedure 519(B)(1). *Id.* at 59-60; *see also* Pa.R.Crim.P. 519(B)(1) (permitting an arresting officer to release a defendant from custody in a DUI related incident where the arresting officer believes the defendant will appear as required and does not pose a threat of immediate physical harm to self or others). At the time Trooper Duncan released Appellant from police custody at the hotel, Trooper Duncan believed Appellant had his wallet, cellular telephone, and vehicle keys in his possession. N.T., 7/26/22, at 60-61. Trooper Duncan further stated that upon releasing Appellant at the hotel, he had no further interaction with Appellant. *Id.*

- 19 -

at 53. Therefore, we discern no abuse of discretion in the trial court's denial of Appellant's request, made prior to the start of trial, for the appointment of new counsel.

The second issue presented in the *Anders* brief challenges the trial court's decision to allow certain testimony provided by Appellant on cross-examination regarding when he last used cocaine. *Anders* Brief at 38-39. While Appellant contends that his required testimony was self-incriminating, counsel points out that the Commonwealth had already established, without objection, the presence of cocaine in Appellant's bloodstream on the evening of the incident through the introduction of expert testimony and the toxicology reports depicting the blood-draw results. *Id.* at 39.

It is well-settled that "[t]he admission of evidence is a matter vested within the sound discretion of the trial court, and such a decision shall be reversed only upon a showing that the trial court abused its discretion." *Commonwealth v. Antidormi*, 84 A.3d 736, 749 (Pa. Super. 2014), *appeal denied*, 95 A.3d 275 (Pa. 2014). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will[,] or partiality, as shown by the evidence of record." *Antidormi*, 84 A.3d at 749 (citation omitted). "In determining whether evidence should be admitted, the trial court must weigh the relevant and

probative value of the evidence against the prejudicial impact of the evidence." ***Id.***

Regarding the scope of cross-examination, Pennsylvania Rule of Evidence 611(b) states that "[c]ross-examination of a witness other than a party in a civil case should be limited to the subject matter of the direct examination and matters affecting credibility, however, the [trial] court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination." Pa.R.E. 611(b); ***see also McManamon v. Washko***, 906 A.2d 1259, 1279 (Pa. Super. 2006) (stating, Rule 611(b) permits the trial court, "in its discretion, to allow inquiry into additional matters as if on direct examination"), *appeal denied*, 921 A.2d 497 (Pa. 2007). "In criminal cases, the right of cross-examination extends not only to the matters testified to on direct examination, but also to any facts tending to refute inferences or deductions arising from those matters." ***Commonwealth v. Karnebauer***, 715 A.2d 1086, 1095 (Pa. 1998); ***see also Commonwealth v. Begley***, 780 A.2d 605, 628 (Pa. 2001) (permitting the Commonwealth to cross-examine a witness about facts already testified to during direct).

The record demonstrates that, on cross-examination, the Commonwealth asked Appellant, "When was the last time you used cocaine before you were stopped by [Trooper Duncan]." N.T., 7/26/22, at 56. Trial counsel objected on the ground the question was outside the scope of [direct] testimony. ***Id.*** Appellant, however, responded, "I can answer it. I can answer it. Can I?" ***Id.*** To which, trial counsel advised Appellant not to answer the

- 21 -

question.  *Id.*  The Commonwealth argued that the question was permitted because it related to  an element of the crime.  *Id.*  The trial court, ultimately, overruled the objection and permitted Appellant to answer the question.  *Id.*  In its Rule 1925(a) opinion, the trial court explained,

> Appellant [] already admitted on direct that he was not surprised marijuana metabolites were in his system since he smokes marijuana every day.  Appellant attempted to explain or mitigate the presence of marijuana in his blood[stream], apparently thinking it would somehow absolve him of criminal culpability, but he conveniently avoided discussion about the cocaine found in the laboratory testing.  The Commonwealth then wanted to ask about his cocaine use since cocaine metabolites were also found in his [blood] system.  The subject was clearly ripe for cross[-]examination.

Trial Court Opinion, 6/19/23, at 11-12.

At trial, the Commonwealth's expert in forensic toxicology testified that the results of the testing performed on Appellant's blood sample, demonstrated, to a reasonable degree of medical certainty, the presence of active metabolites of marijuana (11-Hydroxy Delta-9 THC), active ingredients of marijuana (Delta-9 THC), inactive metabolites of marijuana (Delta-9 Carboxy THC), and metabolites of cocaine (benzoylecgonine).  N.T., 7/26/22, at 39-40.  Furthermore, Commonwealth Exhibit 4, the toxicology report admitted at trial, reported the presence of the same controlled substances in Appellant's blood sample.[12]  *Id.*; *see also* Commonwealth Exhibit 4.

---

[12] The toxicology report defined 11-Hydroxy Delta-9 THC as "an active intermediate metabolite of tetrahydrocannabinol (THC) the active component

Upon review, we discern no abuse of discretion or error of law in the trial court's decision to overrule the objection to the Commonwealth's question on cross-examination regarding Appellant's use of cocaine. The fact that Appellant's blood sample contained the presence of inactive metabolites of cocaine was already disclosed, without defense objection, during the testimony of the Commonwealth's forensic toxicology expert, as well as through the admission into evidence of the toxicology report (Commonwealth Exhibit 4). Because the presence of an inactive metabolite of cocaine, which results from the breakdown of cocaine, was already established through this Commonwealth evidence (and since the presence of cocaine or cocaine metabolites bore some relevance to the charges at Count 4), the Commonwealth was permitted to inquire further from Appellant about his use, prior to operating his vehicle, of cocaine, which, ultimately, resulted in the presence of the inactive metabolite of cocaine being present in his blood sample.

The final issue presented in the **Anders** Brief challenges the sufficiency and weight of the evidence to support the trial court's conviction of Appellant

_____

of marijuana." Delta-9 THC was defined as "the principle psychoactive ingredient of marijuana (cannabis, hashish)." Delta-9 Carboxy THC was defined as "the inactive metabolite of THC (tetrahydrocannabinol) the major active component of marijuana and cannabis." Benzoylecgonine was defined as "an inactive metabolite and chemical breakdown product of cocaine." **See** Commonwealth Exhibit 4, at 2 (unpaginated).

under Sections 3802(d)(1)(i), 3802(d)(1)(iii), and 3802(d)(2). *Anders* Brief at 28-34.

Our standard and scope of review for a challenge to the sufficiency of the evidence is well-settled.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated[,] and all evidence actually received must be considered. Finally, the [fact-finder] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

*Commonwealth v. Reed*, 216 A.3d 1114, 1119 (Pa. Super. 2019).

Section 3802 of the Crimes Code states, in pertinent part, that

> An individual may not drive, operate[,] or be in actual physical control of the movement of a vehicle under any of the following circumstances:
>
> (1) There is in the individual's blood any amount of a:
>
> > (i) Schedule I controlled substance, as defined in the act of April 14, 1972 (P.L. 233, No. 64),1 known as The Controlled Substance, Drug, Device and Cosmetic Act;
> >
> > . . .

> (iii) metabolite of a substance under subparagraph (i)[.]
>
> (2) The individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate[,] or be in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. §§ 3802(d)(1)(i), (d)(1)(iii), and (d)(2).

In order to prove a conviction under Section 3802(d)(1)(i) or 3802(d)(1)(iii), the Commonwealth must establish the operation of a vehicle by a driver who has **any** amount of a Schedule I controlled substance or a metabolite of a Schedule I controlled substance in his or her blood, regardless of impairment. *Commonwealth v. Etchison*, 916 A.2d 1169, 1174 (Pa. Super. 2007), *aff'd*, 943 A.2d 262 (Pa. 2008). "[A] conviction under Section 3802(d)(1) does not require that a driver be impaired[.]" *Etchison*, 916 A.2d at 1174.

In order to convict a defendant under Section 3802(d)(2), the Commonwealth must demonstrate "that [the defendant] was under the influence of a drug[, or combination of drugs,] to a degree that impairs his or her ability to safely drive or operate a vehicle." *Commonwealth v. Williamson*, 962 A.2d 1200, 1204 (Pa. Super. 2008) (citation and original quotation marks omitted), *appeal denied*, 980 A.2d 608 (Pa. 2009). Section 3802(d)(2) "does not require proof of a specific amount of a drug in the driver's system. It requires only proof that the driver was under the influence of a drug or combination of drugs to a degree that the ability to drive is impaired." *Commonwealth v. Tarrach*, 42 A.3d 341, 345 (Pa. Super.

2012), *citing* **Williamson**, 962 A.2d at 1204 and **Commonwealth v. Griffith**, 32 A.2d 1231, 1238 (Pa. 2011). "[E]xpert testimony is not necessary to establish impairment [due to a controlled substance] under [Section] 3802(d)(2) where there exists other independent evidence of impairment." **Commonwealth v. Gause**, 164 A.3d 532, 538 (Pa. Super. 2017), *appeal denied*, 173 A.3d 267 (Pa. 2017). A "lay witnesses may testify to someone's readily observable physical condition or appearance that does not require medical training." **Gause**, 164 A.3d at 538 (citation omitted).

Here, the Commonwealth provided the testimony of a forensic toxicology expert and the toxicology report depicting the results of tests performed on Appellant's blood sample taken after the incident. Both the expert, as well as the report, showed that Appellant's blood sample contained the presence of marijuana (a Schedule I controlled substance) and active metabolites of marijuana. As such, in viewing the evidence in the light most favorable to the Commonwealth, as verdict winner, there was sufficient evidence upon which the trial court, as trier-of-fact, could convict Appellant of DUI under Sections 3802(d)(1)(i) and 3802(d)(1)(iii).[13]

---

[13] A conviction under either Section 3802(d)(1) or Section 3802(d)(2) requires the Commonwealth to establish that a defendant was driving, operating, or in actual physical control of the movement of a vehicle. **See** 75 Pa.C.S.A. § 3802. In the case *sub judice*, Appellant does not challenge the sufficiency of the evidence in support of this element. Moreover, there is sufficient evidence to establish that Appellant was driving, operating, or in physical control of the movement of his vehicle at the time Trooper Duncan stopped Appellant.

To the extent that Appellant challenges the sufficiency of the evidence of impairment necessary to support his conviction of Section 3802(d)(2), Trooper Duncan testified that upon learning, *inter alia*, that Appellant ingested marijuana prior to operating his vehicle, he asked Appellant to exit his vehicle to perform several field sobriety tests. N.T., 7/26/22, at 17-18. Appellant failed to properly perform the field sobriety tests, which included, *inter alia*, the walk-and-turn test, the one-leg stand test, and the Romberg test. ***Id.*** at 20-22. Based upon his observations of Appellant and Appellant's performance during the field sobriety tests, Trooper Duncan concluded Appellant was impaired due to the use of a controlled substance (marijuana) such that he was not able to safely operate his vehicle. ***Id.*** at 23. In viewing the evidence in the light most favorable to the Commonwealth, as verdict winner, Trooper Duncan, as a lay witness trained in the administration of field sobriety tests and the detection of the use of, and impairment by, controlled substances, offered sufficient evidence of Appellant's impairment upon which the trial court could convict Appellant under Section 3802(d)(2).[14] Therefore, we find no merit to Appellant's sufficiency of the evidence claim.

_____

[14] To the extent that Appellant offered testimony that his vehicle keys were returned to him after being released from police custody, we find this assertion to be of no avail. The crucial time for the detection of, and determination of, impairment by Trooper Duncan was at the conclusion of the field sobriety tests and prior to Appellant's arrest and transportation to the hospital for a blood draw. The events following the release of Appellant from police custody do not establish the lack of impairment **at the time of his arrest**, as Appellant contends. Moreover, Trooper Duncan testified that when Appellant was

Counsel also sets forth a claim that the verdict is against the weight of the evidence but contends that this issue is waived because Appellant failed to raise the claim orally or in a written motion prior to sentencing or in a post-sentence motion pursuant to Pennsylvania Rule of Criminal Procedure 607.[15] *Anders* Brief at 34. Generally a weight of the evidence claim is waived on appeal when not properly preserved pursuant to Rule 607. When the issue is raised within the context of an *Anders* brief, however, an appellate court will consider the issue to determine its merit. *Commonwealth v. Hernandez*, 783 A.2d 784, 787 (Pa. Super. 2001) (holding that, *Anders* requires the review of issues otherwise waived on appeal).

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial [court]

_____

released from police custody, Appellant was in possession of his vehicle keys. The trial court, as fact-finder, is free to believe, all, some, or none of the testimony offered and assign credibility to the witnesses. An appellate court must view the evidence in the light most favorable to the verdict winner, which was the Commonwealth in the case *sub judice*.

[15] Rule 607 states, in pertinent part, as follows:

> A claim that the verdict was against the weight of the evidence shall be raised with the trial [court] in a motion for a new trial:
>
> (1) orally, on the record, at any time before sentencing;
>
> (2) by written motion at any time before sentencing; or
>
> (3) in a post-sentence motion.

Pa.R.Crim.P. 607(A)(1-3).

had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial [court] when reviewing a trial court's determination that the verdict is [or is not] against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the [trial] court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted[, or denied,] in the interest of justice.

***Commonwealth v. Horne***, 89 A.3d 277, 285 (Pa. Super. 2014), *citing*

***Commonwealth v. Widmer***, 744 A.2d 745 (Pa. 2000). A trial court abuses

its discretion "where the course pursued represents not merely an error of

judgment, but where the judgment is manifestly unreasonable or where the

law is not applied or where the record shows that the action is a result of

partiality, prejudice, bias[,] or ill-will." ***Horne***, 89 A.3d at 285-286 (citation

omitted); ***see also Commonwealth v. Clay***, 64 A.3d 1049, 1055 (Pa. 2013)

(stating, "[t]he term 'discretion' imports the exercise of judgment, wisdom[,]

and skill so as to reach a dispassionate conclusion within the framework of the

law, and is not exercised for the purpose of giving effect to the will of the [trial

court]"). For an appellant to prevail on a weight of the evidence claim, "the

evidence must be so tenuous, vague[,] and uncertain that the verdict shocks

the conscience of the [trial] court." ***Commonwealth v. Sullivan***, 820 A.2d

795, 806 (Pa. Super. 2003) (citation and internal quotation marks omitted),

*appeal denied*, 833 A.2d 143 (Pa. 2003).

When the challenge to the weight of the evidence is predicated on the credibility of trial testimony, our review of the trial court's decision is extremely limited. Generally, unless the evidence is so unreliable [or] contradictory as to make any verdict based thereon

pure conjecture, these types of claims are not cognizable on appellate review.

**Commonwealth v. Bowen**, 55 A.3d 1254, 1262 (Pa. Super. 2012), *appeal denied*, 64 A.3d 630 (Pa. 2013).

In addressing Appellant's weight claim in its Rule 1925(a) opinion, the trial court stated,

> Here, there was little evidence that weighed in favor of acquittal. Appellant admitted to smoking marijuana every day, including the night before he was pulled over. [Appellant] told Trooper Duncan that the [z]iploc bag he gave him contained marijuana. Appellant only argued that he did not know that driving while having metabolites of a controlled substance in his blood was considered [DUI] and that[,] if he had known[,] he would not have consented to a blood draw. Ignorance of the law is no defense. **See** 18 Pa.C.S.[A. § ]304 (official comment) ([stating,] "[g]enerally speaking, ignorance[,] or mistake of law is no defense["]); [**see also**] **Commonwealth v. Robertson**, 186 A.3d 440, 446 ([Pa. Super.] 2018). [Appellant] did not contest that he was indeed driving with such metabolites in his blood. Therefore, the evidence was not so one-sided toward acquittal that a guilty verdict shocks one's sense of justice.

Trial Court Opinion, 6/19/23, at 8-9.

As discussed *supra*, Trooper Duncan determined that, upon Appellant's failed performance of the field sobriety tests, and his own observations, Appellant was impaired to the extent that he could not safely operate his vehicle due to his admitted use of marijuana prior to travel. Moreover, Appellant testified that he used marijuana daily and that he used the controlled substance prior to the operating of his vehicle. The toxicology report, as well as the Commonwealth's expert, confirmed that a test of Appellant's blood drawn shortly after his arrest revealed the presence of

marijuana, metabolites of marijuana, and metabolites of cocaine. Finally, Trooper Duncan testified that he first observed Appellant's vehicle traveling with a non-functioning rear light. Trooper Duncan proceeded to follow Appellant's vehicle, which traveled at a rate in excess of 65 mph, facts that Appellant did not contest at trial. To the extent that Appellant's claim calls upon this Court to reassess the credibility of the witnesses and reweigh the evidence in an attempt to have us reach a result different than the one reached by the trial court, as fact-finder, such is not the role and function of an appellate court in this situation. Rather, the trial court, as fact-finder, while passing on the credibility of the witnesses and weight of the evidence, was free to believe all, part, or none of the evidence. **Commonwealth v. Dunkins**, 229 A.3d 622, 631 (Pa. Super. 2020), *aff'd*, 263 A.3d 247 (Pa. 2021), *cert. denied*, 142 S.Ct. 1679 (2022). Based upon our review of the record, we discern no error of law or abuse of discretion in Appellant's convictions based on the ground that the verdict was against the weight of the evidence. Consequently, Appellant's claim is without merit.

Upon a review of the record, we conclude that it supports Attorney Entwistle's assessment that Appellant's appeal is wholly frivolous. Moreover, our independent review of the record reveals no additional, non-frivolous claims. Therefore, we grant counsel's petition to withdraw and affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.  Petition to withdraw granted.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/14/2024